# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**NATALIA ANTONIO, as Personal Representative**
**to the Estate of RUBEN TOLEDO, deceased,**

    **Plaintiff,**

v.                                                                          No. 1:19-cv-00572 KG/JFR

**BOARD OF COUNTY COMMISSIONERS FOR**
**THE COUNTY OF CIBOLA, ADRIANNE JARAMILLO,**
**LISA BURNSIDE, MICHAEL HILDEBRANDT,**
**AND MICHELLE LUCERO,**

    **Defendant.**

### DEFENDANT LUCERO'S AND HILDEBRANDT'S MOTION TO DISMISS PLAINTIFF'S CLAIMS BROUGHT UNDER 42 U.S.C. § 1983 AND FOR QUALIFIED IMMUNITY

COME NOW Defendants Hildebrandt and Lucero, by and through their counsel, Jonlyn M. Martinez, Law Office of Jonlyn M. Martinez, LLC, and hereby move this Honorable Court to dismiss this Complaint against them pursuant to Fed.R.Civ.P.12(b)(6) because Count I of the Plaintiff's Amended Complaint fails to state a claim on the merits against these Defendants and because these Defendants are also entitled to qualified immunity.

Due to the nature of this Motion, it is deemed opposed.

**FACTUALL ALLEGATIONS CONTAINED IN THE PLAINTIFF'S COMPLAINT[1]**

The following allegations are contained in the Plaintiff's Amended Complaint [Document No. 3]:

---

[1] The conclusory allegations, not based on facts, have not been included herein.

12. At all material times, Defendant Michael Hildenbrant was a nurse employed by CCDC as the facility's health services administrator (HSA).

27. Ruben's blood pressure was 169/94, his pulse was 100 beats per minute, and had a glucose level of 161.

33. On June 23, 2017 Ruben was seen by Defendant Michelle Lucero, a physician's assistant at the jail.

34. Mr. Toledo reported daily alcohol use of beer and hard liquor prior to being booked into the jail.

35. Defendant Lucero noted Ruben's blood pressure and pulse were still elevated.

36. Defendant Lucero noted that Mr. Toledo was a "difficult historian" with a "poor memory" and that he had a knowledge deficit.

38. Defendant Lucero ordered Mr. Toledo be given Lisinopril, a blood pressure medication, and Metformin, a medication used to treat diabetes.

40. Later that day, Mr. Toledo called master control screaming to be let out of his cell.

42. When officers arrived at his cell and opened the door, Mr. Toledo ran in an attempt to get out of the cell.

43. As he ran, officers maced Ruben, then handcuffed him.

44. Officers determined Ruben would be moved from general population and escorted him to medical so he could be cleared for housing in segregation.

46. When he arrived, Ruben told medical staff that he was experiencing alcohol withdrawal and was hallucinating.

47. Medical staff contacted Defendant Hildenbrant for instruction.

48. Defendant Hildenbrant was not at the facility.

49. Defendant Hildenbrant is a nurse without prescribing authority.

50. Defendant Hildenbrant directed staff to place Ruben on alcohol withdrawal protocol, including prescription medication, over the phone.

51. Defendant Hildenbrant did not go to the facility or attempt to see Ruben before prescribing this medication.

52. When this medication was prescribed, Ruben's vitals were still abnormal, with a blood pressure of 179/100 and a pulse of 120 beats per minute.

105. Defendant Lucero in fact noted that Ruben was "chemically impaired" during his time at the jail.

117. Defendant Hildenbrant prescribed Librium and Clonidine over the phone without evaluating Ruben and without prescribing authority.

There are no additional specific factual allegations concerning Defendants Hildebrandt and Lucero.

## POINTS AND AUTHORITIES

Pursuant to Fed.R.Civ.P. 12(b)(6), it has long been held that dismissal is appropriate "when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." ***Yoder v. Honeywell, Inc.***, 104 F.3d 1215, 1224 (10th Cir.) (internal quotations omitted), ***cert. den***. 118 S.Ct. 55 (1997). Conclusory allegations are not "well-pleaded," and thus are not taken as true for purposes of a Motion to Dismiss. ***Hall v. Bellmon,*** 935 F.2d 1106, 1110 (10th Cir. 1991). A complaint must include enough facts to state a claim for relief that is "plausible on its face" and to "raise a right to relief

above the speculative level." ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The complaint need not include detailed factual allegations, but it must provide more than "a formulaic recitation of the elements of a cause of action." ***Id***. A claim is facially plausible when plaintiff has alleged enough factual content for the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. ***Ashcroft v. Iqbal***, 556 U.S. 662, 677, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

As the Tenth Circuit explained, "[t]his requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." ***Robbins, supra***, 519 F.3d at 1248.  In ***Ashcroft v. Iqbal,*** 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009), the Supreme Court expanded on the principles in ***Twombly***:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

The degree of specificity "depends on context," and there, as here, the context was "a claim of qualified immunity by state officials or employees who were sued for damages in their personal capacity for injuries …." ***Robbins, supra***, 519 F.3d at 1248.

> Although we apply "the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally," *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1200 (10th Cir.2007), complaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants. The Twombly standard may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity "at the earliest possible stage of a litigation." [Citations omitted]

4

***Robbins, supra***, 519 F.3d at 1249. This standard must be considered in light of the requirement that Section 1983 liability must be based on personal acts of the individual sought to be held liable.

### A. The Plaintiff's Amended Complaint Fails To Contain Sufficient Factual Allegations to Establish That Defendants Hildebrandt and Lucero were Deliberately Indifferent To Mr. Toledo's Medical Needs.

The Eighth Amendment's prohibition against cruel and unusual punishment/deliberate indifference to serious medical needs does not directly apply to pretrial detainees, but only applies after conviction and sentence. See ***Graham v. Connor***, 490 U.S. 386, 392 n. 6, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). However, the Supreme Court has held that "[p]retrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners." ***Bell v. Wolfish***, 441 U.S. 520, 545, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). In ***Estelle v. Gamble***, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." ***Id***. at 104 (citation omitted) (quotations omitted). Prison doctors and prison guards may thus be liable under § 1983 for "indifference . . . manifested . . . in their response to the prisoner's needs or by . . . intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." ***Id***. at 104-05 (footnotes omitted). The Tenth Circuit has applied the ***Estelle*** rule to treatment of pretrial detainees, holding that "pretrial detainees are . . . entitled to the degree of protection against denial of medical attention which applies to convicted inmates." ***Walton v. Gomez (In re Estate of Booker)***, 745 F.3d 405, 429-32 (10th Cir. 2014), quoting ***Garcia v. Salt Lake Cnty***., 768 F.2d 303, 307 (10th Cir. 1985); ***see Howard v. Dickerson***, 34 F.3d 978, 980 (10th Cir. 1994) (same). It is therefore

"proper to apply a due process standard which protects pretrial detainees against deliberate indifference to their serious medical needs." *Garcia*, 768 F.2d at 307.

> For these reasons, the Court construes Plaintiff's deliberate indifference claims as Fourteenth Amendment due process claims, subject to Eighth Amendment standards. To state a potentially cognizable claim pursuant to these standards, a plaintiff must satisfy a two-pronged test. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Id.*

*Walton v. Gomez (In re Estate of Booker)*, 745 F.3d 405, 429-30 (10th Cir. 2014). In the present case, the allegations contained in the Plaintiff's Complaint do not establish either of the requisite prongs required to establish her claim of an alleged due process claim against Defendants Hildebrandt and Lucero.

### 1. Plaintiff's 42 U.S.C. § 1983 Claim Against Defendant Hildebrandt Fail.

First, regarding Defendant Hildebrandt, the only factual allegations against him are that he placed Mr. Toledo on a detox protocol after Mr. Toledo disclosed that he was suffering from symptoms of alcohol withdrawal. *See Plaintiff's Amended Complaint* [Document No. 3], ¶¶'s 12, 40, 42, 43, 44, 46, 47, 48, 49, 50 and 52. The Plaintiff's issue with this course of conduct is that Defendant Hildebrandt had no prescribing authority and he did not personally evaluate Mr. Toledo. *Id*. Yet, the Plaintiff complains that Mr. Toledo was suffering from systems of alcohol withdrawal and Defendant Hildebrandt prescribed Librium and Clonidine over the phone without evaluating Mr. Toledo and without prescribing authority. Librium and Clonidine are part of the Defendant's withdrawal protocol and are medications designed to treat withdrawal

6

symptoms. *Id*., at ¶ 50.[2] The Plaintiff does not complain that the medication given to Mr. Toledo were not reasonable or appropriate under the circumstances. The Plaintiff does not even allege that these medications harmed Mr. Toledo in any manner. Thus, the Plaintiff failed to demonstrate that Defendant Hildebrandt's alleged conduct resulted in further significant injury or the unnecessary and wanton infliction of pain. In addition, the Plaintiff cannot show that Defendant Hildebrandt's response to Mr. Toledo's disclosure that he was suffering from withdrawal symptoms was deliberately indifferent. Therefore, Count I of the Plaintiff's Amended Complaint fails to state a claim for which relief can be granted as to Defendant Hildebrandt.

### 2.  Plaintiff's 42 U.S.C. § 1983 Claims Against Defendant Lucero Fail.

With regard to Defendant Lucero, the Plaintiff admits that she physically evaluated Mr. Toledo, noted his vital signs and prescribed him with appropriate medications for his medical conditions. *See Plaintiff's Amended Complaint* [Document No. 3], ¶¶'s 27, 33, and 38.[3] There is no allegation that Defendant Lucero was ever aware that Mr. Toledo was suffering from symptoms from alcohol withdrawal. In fact, the Plaintiff admits that Mr. Toledo did not disclose that he was suffering from symptoms of withdrawal until after his interaction with Defendant Lucero. *Id*., ¶¶'s 40 and 46. The only facts alleged by the Plaintiff reveal that Defendant Lucero

---

[2] Librium is used to treat anxiety disorders. This medicine may be used short-term to treat anxiety you may have before a surgery. This medicine is also used to treat anxiety or withdrawal symptoms of alcoholism. https://www.drugs.com/mtm/librium.html

Clonidine lowers blood pressure by decreasing the levels of certain chemicals in your blood. This allows your blood vessels to relax and your heart to beat more slowly and easily. https://www.drugs.com/clonidine.html

[3] Defendant Lucero ordered Mr. Toledo be given Lisinopril, a blood pressure medication and Metformin, a medication used to treat diabetes. [Document No. 3, ¶ 38].

physically evaluated Mr. Toledo and prescribed him with medication to treat his medical conditions. There are no allegations that Defendant Lucero had any additional interaction with Mr. Toledo or was ever made aware that his condition changed after her evaluation. Thus, once again, the Plaintiff cannot establish that Defendant Lucero was aware of a serious medical condition suffered by Mr. Toledo that she was deliberately indifferent to this condition. Therefore, Count I of the Plaintiff's Complaint fails to state a claim for which relief can be granted as to Defendant Lucero.

### B. The Defendants Are Entitled To Qualified Immunity.

The doctrine of qualified immunity shields officials from civil liability so long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" ***Mullenix v. Luna***, 136 S. Ct. 305, 308 (2015), ***quoting Pearson v. Callahan***, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (***quoting Harlow v. Fitzgerald***, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." ***Id***., ***quoting Reichle v. Howards***, 566 U.S. 658, 664, 132 S. Ct. 2088, 182 L. Ed. 2d 985, 989 (2012) (internal quotation marks and alteration omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." ***Id***., ***quoting Ashcroft v. al-Kidd***, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011). Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." ***Id***., ***quoting Malley v. Briggs***, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).

Qualified immunity is designed to prevent the "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public

service." *Harlow, supra,* 457 U.S., at 816, 102 S.Ct., at 2737. Specifically, the policy underpinnings of this doctrine involve "strik[ing] a balance 'between the need, on one hand, to hold responsible public officials exercising their power in a wholly unjustified manner and, on the other hand, to shield officials responsibly attempting to perform their public duties in good faith from having to explain their actions to the satisfaction of a jury.' " *Locurto v. Safir,* 264 F.3d 154, 162-63 (2d Cir.2001) (*quoting Kaminsky v. Rosenblum,* 929 F.2d 922, 924-25 (2d Cir.1991)). The doctrine recognizes that officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages and only if unjustified lawsuits are quickly terminated. *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

The presumption in favor of finding qualified immunity is necessarily high, protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Where "officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." *Id.* Simply stated, qualified immunity ensures "that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz,* 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Where qualified immunity is raised as a defense to a claim under Section 1983, it is plaintiff's burden to point to particular facts that overcome same. *See Mitchell v. Forysthe, supra,* 472 U.S. at 526. Plaintiff's burden has been described by the Tenth Circuit as a "heavy two-part burden", entailing first a showing that defendant's actions violated a constitutional right, and second, that those rights were clearly established at the time of the conduct at issue. *Albright v. Rodriquez,* 51 F.3d 1531, 1534 (10th Cir. 1995).

The Tenth Circuit has held that:

> [P]laintiff must do more than identify a clearly established legal test and then allege that the defendant has violated it. The plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited. The 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'

***Hannula v. City of Lakewood,*** 907 F.2d 129, 131 (10th Cir. 1990) *(quoting **Anderson v. Creighton,*** 483 U.S. 635, 640 (1987)). The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains. ***Farmer v. Perrill***, 288 F.3d 1254, 1259 (10th Cir.2002).

    Defendants Hildebrandt and Lucero submit that there are no well pled factual allegations that they personally violated the Plaintiffs' constitutional rights in this matter. In addition, the Defendants were unable to locate a case which would establish that the Defendants' alleged conduct violated clearly established law. Therefore, based on the foregoing, Defendants Hildebrandt and Lucero are entitled to qualified immunity in this matter.

## CONCLUSION

    For all the foregoing reasons, Defendants Hildebrandt and Lucero request that this Court grant their Motion to Dismiss and dismiss Count I of the Plaintiff's Amended Complaint against them.

>Respectfully Submitted:
>
>LAW OFFICE OF JONLYN M. MARTINEZ, LLC
>
>By: ***/s/ Jonlyn M. Martinez***
>JONLYN M. MARTINEZ
>Attorney for Defendant
>P.O. Box 1805
>Albuquerque, NM 87103-1805
>P: (505) 247-9488
>jonlyn@jmartinezlaw.net

I hereby certify that a copy of the foregoing
was served via CM/ECF on
December 30, 2019 to all counsel of record:

*/s/ Jonlyn M. Martinez*