IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NATALIA ANTONIO, a Personal Representative
To the Estate of RUBEN TOLEDO, deceased,

    Plaintiff,

vs.                                                                                                     Civ. No. 19-572 KG/JFR

BOARD OF COUNTY COMMISSIONERS FOR
THE COUNTY OF CIBOLA, ADRIANNE JARAMILLO,
LISA BURNSIDE, MICHAEL HILDENBRANT,
AND MICHELLE LUCERO,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On July 1, 2017, Ruben Toledo died at the University of New Mexico Hospital. He had been transferred there from the Cibola General Hospital, where he had undergone emergency medical attention due to a loss of consciousness and severe seizure episodes while a pre-trial detainee at the Cibola County Detention Center (CCDC). Toledo's personal representative filed this lawsuit against Defendants, including CCDC and certain staff members, claiming *inter alia* violation of Federal Civil Rights Act and the Constitution of the United States. (Doc. 3, Amended Complaint).

Defendants Michelle Lucero and Michael Hildenbrant filed the instant motion under Fed. R. Civ. P. to dismiss Count 1 of the complaint as it applies to them, asserting qualified immunity. (Doc. 27). The matter now is fully and timely briefed. *See* (Doc. 37, Response and Doc. 38, Reply). This Court notes jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983 and 1988. Having considered the briefing, the Amended Complaint for the Recovery of Damages Caused

by the Deprivation of Civil Rights and Wrongful Death (Amended Complaint) (Doc. 3), the controlling law, and for the following reasons, the Court now grants the Motion to Dismiss.

   *I. Summary of the Amended Complaint[1]*

On June 20, 2017, a United States Park Ranger arrested Ruben Toledo at the Petroglyph National Park "for suspicion of operating a motor vehicle while intoxicated." (Doc. 3) at ¶¶ 18-21. The Park Ranger transported Toledo to the Sandoval County Detention Center and Toledo was transferred to the Cibola County Detention Center (CCDC) the next day. *Id.* at ¶ 22.

Upon his arrival Toledo allegedly told CCDC staff that "he suffered from depression and anxiety, and staff noted he was chemically impaired." *Id.* at ¶ 24. Toledo also allegedly reported "prior to being booked" that he used alcohol daily. *Id.* at ¶ 34. According to Plaintiff, Toledo's vitals were abnormal at the time of booking. *Id.* at ¶ 26. Nonetheless, Plaintiff claims "staff cleared [Toledo] for housing in general population." *Id.* at ¶ 28.

Plaintiff alleges that Toledo asked to be removed from the "general population because he feared he was in danger of bodily harm by other inmates if he remained." *Id.* at ¶ 31. Plaintiff also alleges Toledo "began seeing things in his cell…." *Id.* at ¶ 32.

On June 23, 2017, Defendant Lucero, a physician's assistant, examined Toledo. *Id.* at ¶ 33. Defendant Lucero purportedly noted that Toledo's "blood pressure and pulse were still elevated…." *Id.* at ¶ 35. According to Plaintiff, "Defendant Lucero noted that Mr. Toledo was a 'difficult historian' with a 'poor memory' and that he had a knowledge deficit." *Id.* at ¶ 36. Plaintiff contends that Defendant Lucero prescribed "Lisinopril, a blood pressure medication,

---

[1] The Court summarizes only those portions of the Amended Complaint that are relevant to the Motion to Dismiss.

and Metformin, a medication used to treat diabetes." *Id.* at ¶ 38.  Plaintiff alleges that Toledo then went "back to his cell with no further care or monitoring ordered." *Id.* at ¶ 39.

Plaintiff further alleges that later that day Toledo began "screaming to be let out of his cell" and hallucinating.  *Id.* at ¶¶ 40-41.  Plaintiff asserts that when jail officers went to check on Toledo, he ran to get out of his cell, causing jail officers to mace and handcuff him.  *Id.* at ¶¶ 42-43.  Plaintiff maintains that jail officers then decided to have Toledo medically cleared in order to house him in segregation.  *Id.* at ¶ 44.

Plaintiff contends that Toledo "told medical staff that he was experiencing alcohol withdrawal and was hallucinating." *Id.* at ¶ 46.  Plaintiff also contends that Toledo's "vitals were still abnormal." *Id.* at ¶ 52.  According to Plaintiff, medical staff contacted Defendant Hildenbrant, a nurse without prescribing authority, for instructions.  *Id.* at ¶¶ 47 and 49.  "Defendant Hildenbrant was not at the facility." *Id.* at ¶ 48.  Plaintiff alleges that "Defendant Hildenbrant directed staff to place [Toledo] on alcohol withdrawal protocol, including prescription medication, over the phone." *Id.* at ¶ 50.

Plaintiff maintains that Toledo went back to segregation where he "was observed periodically by jail guards," but "not monitored by medical staff." *Id.* at ¶¶ 56-57.  According to Plaintiff, beginning the night Toledo returned to segregation, he began acting erratically and could not stand on his own.  *Id.* at ¶¶ 58-67.  The next morning, Plaintiff claims Toledo suffered a seizure and injured his head.  *Id.* at ¶¶ 72-78.  Plaintiff alleges that Toledo finally became unresponsive and was transported to Cibola General Hospital and then to the University of New Mexico Hospital.  *Id.* at ¶¶ 84-96.  Toledo never regained consciousness and was removed from life support on July 1, 2017, and, consequently, died.  *Id.* at ¶¶ 97-99.  This lawsuit follows.

3

In Count I of the Amended Complaint, Plaintiff brings a 42 U.S.C. § 1983 claim against Defendants Lucero and Hildenbrant, in their individual capacities, for violating Toledo's Fourteenth Amendment right to adequate medical care.[2] Plaintiff alleges that Defendant Lucero knew that Toledo was "chemically impaired" but failed to adequately monitor Toledo for alcohol withdrawal. *Id.* at ¶¶ 105, 124-25. Plaintiff also alleges that when Defendant Hildenbrant learned that Toledo was hallucinating Defendant Hildenbrant should have transferred Toledo to a hospital rather than prescribe alcohol withdrawal medications (Librium and Clonidine), without the prescribing authority to do so, over the phone. *Id.* at ¶¶ 116-20. Furthermore, Plaintiff asserts that Defendant Hildenbrant failed to monitor Toledo's condition. *Id.* at ¶¶ 124-25.

## II. The Motion to Dismiss

Defendants Lucero and Hildenbrant move under Fed. R. Civ. P. 12(b)(6) to dismiss Count I, as it applies to them, on the basis of qualified immunity. First, Defendants Lucero and Hildenbrant argue that Plaintiff fails to state plausible Fourteenth Amendment claims against them for failure to provide adequate medical care. Second, Defendants Lucero and Hildenbrant argue that they "were unable to locate a case which would establish that the Defendants' alleged conduct violated clearly established law." (Doc. 27) at 10. Plaintiff opposes the Motion to Dismiss in its entirety.

## III. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[2] Plaintiff also brings Count I against Defendant Lisa Burnside, a CCDC sergeant. In addition to Count I, Plaintiff brings Counts II and III, negligence claims, against Defendants Board of County Commissioners for the County of Cibola, Lucero, Hildenbrant, and Burnside. Finally, Plaintiff brings Count IV against Defendant Adrianne Jaramillo, the CCDC administrator, alleging that "Defendant Jaramillo practiced a custom and policy of providing inadequate medical care to inmates at CCDC." (Doc. 3) at ¶ 184.

accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (citation omitted). In making this plausibility assessment, courts "accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (citation omitted).

In evaluating a qualified immunity defense in the context of a Rule 12(b)(6) motion to dismiss, courts "must determine whether the plaintiff pled facts indicating: (1) the defendant violated a statutory or constitutional right and (2) that right was 'clearly established' at the time of the challenged conduct." *Crall v. Wilson,* 769 Fed. Appx. 573, 575 (10th Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "The burden of making this two-part showing lies with the plaintiff…." *Carabajal v. City of Cheyenne, Wyoming*, 847 F.3d 1203, 1208 (10th Cir. 2017). "This is a heavy burden." *Id.* Moreover, courts "may address the two prongs of the qualified immunity analysis in either order: '[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense.'" *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir.), *cert. denied sub nom. Cummings v. Bussey*, __ U.S. __, 140 S.Ct. 81 (2019) (citation omitted).

With respect to the second qualified immunity prong, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Thomas v. Durastanti*, 607

F.3d 655, 669 (10th Cir. 2010) (quotation omitted).  Importantly, "the federal right allegedly violated must have been 'clearly established at the time of the defendant's unlawful conduct.'" *Cummings*, 913 F.3d at 1240 (citation omitted).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent."  *District of Columbia v. Wesby*, ⸺ U.S. ⸺, 138 S.Ct. 577, 589 (2018).  The determinative "question is 'whether the violative nature of the *particular* conduct is clearly established.'"  *Mullenix v. Luna*, ⸺ U.S. ⸺, 136 S.Ct. 305, 308 (2015) (*per curiam*) (citation omitted).  Hence, the Supreme Court has repeatedly instructed circuit courts "not to define clearly established law at a high level of generality."  *Kisela v. Hughes*, ___ U.S. ___, 138 S.Ct. 1148, 1152 (2018).  Although "a case directly on point" is not required, "existing precedent must have placed the constitutional question regarding the illegality of the defendant's conduct beyond debate."  *Cummings*, 913 F.3d at 1239.

Ordinarily, "a preexisting Supreme Court or Tenth Circuit decision, or the weight of authority from other circuits, must make it apparent to a reasonable officer that the nature of his conduct is unlawful."  *Carabajal*, 847 F.3d at 1210.  Nonetheless, "when a public official's conduct is so egregious even a general precedent applies with 'obvious clarity,' the right can be clearly established notwithstanding the absence of binding authority involving materially similar facts."  *Ullery v. Bradley*, 949 F.3d 1282, 1291 (10th Cir. 2020) (citation omitted).  Notably, "the 'obvious clarity' scenario, is a 'narrow exception' to the 'normal rule that only case law and specific factual scenarios can clearly establish a violation.'"  *J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1260 (11th Cir. 2018) (citation omitted).  In sum, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Mullenix*, 136 S.Ct. at 308.

IV. Discussion

    A. Whether Plaintiff has Stated Plausible Fourteenth Amendment Claims Against Defendants Lucero and Hildenbrant

"Under the Fourteenth Amendment's due process clause, pretrial detainees … are entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment." *Barrie v. Grand County, Utah*, 119 F.3d 862, 867 (10th Cir. 1997). The Eighth Amendment provides that a "claim for inadequate medical attention must be judged against the 'deliberate indifference to serious medical needs' test…." *Id.* at 868 (citation omitted). "The deliberate indifference standard has objective and subjective components," both of which a plaintiff must prove. *Sawyers v. Norton*, 962 F.3d 1270, 1283 (10th Cir. 2020) (citation omitted).

"The objective component … is met if the harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause." *Id.* (citation omitted). A medical need is "sufficiently serious … if the condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (citation omitted). Here, Defendants Lucero and Hildenbrant do not contest that Toldeo suffered a sufficiently serious medical need. *See Martinez v. Beggs,* 563 F.3d 1082, 1088-89 (10th Cir. 2009) (agreeing that death meets sufficiently serious harm element of objective component of Eighth Amendment claim). Plaintiff, therefore, has met the objective component of the deliberate indifference standard.

To meet "the subjective component, the plaintiff must show the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Sawyers*, 962 F.3d at 1283. (citations omitted). To make that showing, the plaintiff must demonstrate that the official was both

"aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (citation omitted).

In the context of a medical professional's alleged subjective state of mind, the Court considers the medical professional's "knowledge at the time he prescribed treatment for the symptoms presented, not to the ultimate treatment necessary." *Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006). Moreover, "[d]eliberate indifference to [an excessive risk to inmate health] requires more than a showing of negligence … or even malpractice…." *Vasquez v. Davis*, 882 F.3d 1270, 1278 (10th Cir. 2018) (citations omitted). Put another way, "[s]o long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met," i.e., a "good faith effort to diagnose and treat" a medical condition does not amount to a conscious disregard of a claimed harm. *See Self*, 439 F.3d at 1233, 1235 (determining that reasonable jury could not infer conscious disregard of risk by doctor when nothing suggested doctor "otherwise failed to provide a course of treatment consistent with the symptoms he recognized"); *Mata* v. *Saiz*, 427 F.3d 745, 761 (10th Cir. 2005) (determining that district court correctly concluded nurse was entitled to qualified immunity when record showed she "made a good faith effort to diagnose and treat Ms. Mata's medical condition"); *see also Silverstein v. Fed. Bureau of Prisons*, 559 Fed. Appx. 739, 754 (10th Cir. 2014) (observing that "if an official is aware of the potential for harm but takes reasonable efforts to avoid or alleviate that harm, he bears no liability").

Plaintiff argues, however, that the United States Supreme Court's ruling in *Kingsley v. Hendrickson* eliminates the subjective component of the deliberate indifference standard. 576 U.S. 389 (2015). In *Kingsley*, a pretrial detainee alleged that jail officers used excessive force on

him in violation of the Fourteenth Amendment's Due Process Clause.  *Id.* at 393.  The Court held that "courts must use an objective standard" instead of "a subjective standard that takes into account a defendant's state of mind" to decide "whether the force deliberately used is, constitutionally speaking, 'excessive[]'…."  *Id.* at 396.  The Court concluded "that a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."  *Id.* at 396–97.

Plaintiff observes that "various circuits have interpreted *Kingsley* to apply to conditions of confinement and/or inadequate medical care claims under the Fourteenth Amendment rather than just excessive force claims."  (Doc. 37) at 6 (citing Second, Seventh and Ninth Circuit cases). [3]  Plaintiff relies on *Colbruno v. Kessler* to project that the Tenth Circuit will join those circuits in applying *Kingsley* to conditions of confinement claims, including inadequate medical care claims.  928 F.3d 1155 (10th Cir. 2019) (applying *Kingsley* to case involving pretrial detainee taken to hospital without clothing).

After *Colbruno* was decided, the Tenth Circuit "noted 'the circuits are split on whether *Kingsley* alters the standard for conditions of confinement and inadequate medical care claims brought by pretrial detainees.'"  *Sawyers*, 962 F.3d at 1282 n. 11 (citation omitted).  Even so, and given existing Tenth Circuit precedent, this Court will apply the subjective standard to conditions of confinement claims, including inadequate medical care claims.  *Id.* (holding that "we need not resolve this question for our circuit because we can affirm under the Eighth Amendment deliberate indifference standard, which is more favorable to the three officers").  *See, e.g., Parks v. Taylor,* 2020 WL 1271587, *3-4 (W.D. Okla.) (citations omitted) (stating "[A]bsent a Tenth

---

[3] Plaintiff acknowledges that the Fifth and Eighth Circuits confine the holding in *Kingsley* to excessive force cases.  (Doc. 37) at 7.

Circuit decision [applying *Kingsley* to inadequate medical care claims], this Court should continue to apply existing precedent").

        *1. The Subjective Component:  Defendant Lucero*

Viewing the allegations in the Amended Complaint as true and viewing any reasonable inferences therefrom in the light most favorable to Plaintiff, Plaintiff has alleged that Defendant Lucero was aware of the following facts when she examined Toledo on June 23, 2017, three days after Toledo's arrest.  First, Defendant Lucero observed that Toledo was a "difficult historian," had a "poor memory," and "had a knowledge deficit."  (Doc. 3) at ¶ 36.  Second, Defendant Lucero knew that Toledo had a chemical impairment and suffered from alcohol withdrawal.  *See id.* at ¶ 105.  Finally, Defendant Lucero observed that Toledo's blood pressure and pulse were elevated, symptoms associated with alcohol withdrawal.  Notably, Plaintiff does not specifically allege that Defendant Lucero knew that Toledo was "seeing things in his cell" or had "asked to be moved out of general population because he feared he was in danger of bodily harm by other inmates if he remained."  *See id.* at ¶¶ 34, 31, and 32.  Consequently, the allegations in the Amended Complaint indicate that Defendant Lucero knew at the time she examined Toledo that he was experiencing alcohol withdrawal, which caused an elevated blood pressure and pulse.

Furthermore, the allegations in the Amended Complaint show that Defendant Lucero provided a level of care consistent with the medical issues she was aware of, i.e., she prescribed blood pressure and diabetes medications to treat Toledo's elevated blood pressure and pulse.  In other words, the allegations, as presently pled, indicate that Defendant Lucero made a "good faith effort to diagnose and treat" Toledo's elevated blood pressure and pulse apparently caused by a chemical impairment or alcohol withdrawal.  *See Mata*, 427 F.3d at 761.

Even if Defendant Lucero also should have required monitoring or even hospitalization, as Plaintiff alleges, those allegations amount, at most, to allegations of negligence or medical malpractice, especially when one considers Defendant Lucero's medically consistent and good faith effort to treat Toledo's elevated blood pressure and pulse. *See Estate of Hunter by Hunter v. Uintah Cty.*, 807 Fed. Appx. 868, 872 (10th Cir. 2020) (holding that "although the defendants took steps to ameliorate Mr. Hunter's condition, they were wrong about the risk that Mr. Hunter faced, which does not satisfy the subjective component of the deliberate indifference test"); *Sparks v. Singh*, 690 Fed. Appx. 598, 604 (10th Cir. 2017) (observing that "the 'inadvertent failure to provide adequate medical care' tantamount to negligence does not satisfy the deliberate indifference standard" (citation omitted)).  Such negligence or malpractice does not meet the subjective component required for a Fourteenth Amendment inadequate medical care claim. Furthermore, Plaintiff's mere disagreement "with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999); *see also Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (noting that "[d]isagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation").

The allegations in the Amended Complaint simply do not demonstrate that Defendant Lucero knew of an excessive risk to Toledo's health that she completely disregarded.  Hence, Plaintiff has not pled facts that show she meets the subjective component of the deliberate indifference standard as to Defendant Lucero.  Plaintiff, therefore, has not alleged sufficient facts to show that Defendant Lucero was deliberately indifferent to Toledo's medical needs. Consequently, Plaintiff has not stated a plausible Fourteenth Amendment inadequate medical care claim against Defendant Lucero.

11

*2. The Subjective Component:  Defendant Hildenbrant*

Viewing the allegations in the Amended Complaint as true and viewing any reasonable inferences therefrom in the light most favorable to Plaintiff, Plaintiff has alleged that Defendant Hildenbrant was aware of the following facts when he examined Toledo.  First, Defendant Hildenbrant knew from medical staff that Toledo was experiencing alcohol withdrawal and hallucinations.  Finally, Defendant Hildenbrant knew that Toledo's blood pressure and pulse were abnormal, symptoms associated with alcohol withdrawal.

The allegations in the Amended Complaint also indicate that Defendant Hildenbrant did not disregard Toledo's alcohol withdrawal.  Instead, Defendant Hildenbrant provided Toledo a level of care consistent with alcohol withdrawal by prescribing alcohol withdrawal medication.  This provision of care demonstrates a good faith effort to diagnose and treat Toledo's alcohol withdrawal.  *See Mata*, 427 F.3d at 761.

In addition, considering Defendant Hildenbrant ordered appropriate medication for Toledo's alcohol withdrawal, the allegations against him sound more in negligence or medical malpractice and not deliberate indifference; specifically, failure to physically examine Toledo; provision of an unauthorized prescription; failure to order medical staff to monitor Toledo; and failure to hospitalize.  Again, Plaintiff's mere disagreement "with … a prescribed course of treatment does not state a constitutional violation." *Perkins*, 165 F.3d at 811.

The allegations in the Amended Complaint do not demonstrate that Defendant Hildenbrant completely disregarded an excessive risk to Toledo's health.  Plaintiff, therefore, has not pled facts that show she satisfies the subjective component of the deliberate indifference standard as to Defendant Hildenbrant.  The Court concludes that Plaintiff has not alleged

sufficient facts to state a plausible Fourteenth Amendment inadequate medical care claim against Defendant Hildenbrant.

In sum, Plaintiff has failed to plead facts that plausibly demonstrate that Defendants Lucero and Hildenbrant violated Toledo's Fourteenth Amendment rights, the first qualified immunity prong. Although this determination ends the qualified immunity analysis in favor of Defendants Lucero and Hildenbrant, the Court also will examine whether Plaintiff meets the second qualified immunity prong, the "clearly established" right requirement.

> B.  Whether Toledo's Right to More Medical Treatment than Provided by Defendants Lucero and Hildenbrant was Clearly Established

Plaintiff argues first that it has been clearly established for decades that a pretrial detainee has a constitutional right to adequate medical care. *See Mata*, 427 F.3d at 749 (recognizing that "there is little doubt that deliberate indifference to an inmate's serious medical need is a clearly established constitutional right"). However, a simple recitation of this general legal principle does not satisfy Plaintiff's burden of demonstrating that a clearly established right existed in June 2017 sufficient to overcome the qualified immunity defense. The Tenth Circuit in *Cox v. Glanz* rejected similar argument and "found this 'anemic attempt ... did virtually nothing to define the contours of the clearly-established-law question….'" 800 F.3d 1231, 1246 (10th Cir. 2015). Indeed, the Tenth Circuit noted that the plaintiff could not

> discharge her burden by relying upon authorities that do no more than establish general legal principles—even if those principles are apposite in the Eighth Amendment deliberate-indifference context—such as the legal truism that medical professionals in certain circumstances can be held liable for handling their gatekeeper role with deliberate indifference.

*Id.* at 1247 n.8. The Court concluded the plaintiff's "arguments seeking 'to define clearly established law at a high level of generality' are unavailing." *Id.* (citation omitted).

Next, Plaintiff cites *Garcia v. Salt Lake County*, a case that clearly establishes a pretrial detainee's right to adequate medical care "in the context of an alcoholic detainee who had overdosed on barbiturates." (Doc. 37) at 15; 768 F.2d 303 (10th Cir. 1985). In *Garcia*, the plaintiff sued the County that administered the jail and had admitted an intoxicated unconscious pretrial detainee. *Garcia*, 768 F.2d at 305-06. The jail failed to adequately monitor the pretrial detainee and provide medical personnel. *Id.* As a result, the pretrial detainee died while in the jail's custody. *Id.* at 306. The Tenth Circuit "conclude[d] that the jury's finding against the County is supported by sufficient evidence of gross deficiencies and deliberate indifference in staffing and procedures to monitor persons admitted to the jail in an unconscious condition who are suspected of being intoxicated." *Id.* at 308. The Court further found that "[t]he record supports the conclusion that the County's policy of admitting to jail unconscious persons suspected of being intoxicated, carried out with the described deficiences and indifference, caused a violation of Garcia's constitutional rights." *Id.*

The Tenth Circuit, however, has "distinguished *Garcia* in cases involving detainees who are inebriated but conscious and responsive." *Estate of Duke by & through Duke v. Gunnison Cty. Sheriff's Office*, 752 Fed. Appx. 669, 673 (10th Cir. 2018).

> Although defendants in *Garcia* were aware that Garcia was unconscious for many hours, they took no action to attend to his obvious medical needs. By comparison, [the detainee in this case] was conscious, on his feet, argumentative, and cognizant that he was being arrested. [He] exhibited characteristics that are common to many intoxicated individuals.

*Id.* at 674 (quoting *Martinez v. Beggs,* 563 F.3d 1082, 1091 (10th Cir. 2009)). The Tenth Circuit in *Estate of Duke by & through Duke* then noted that "to defeat a qualified immunity defense 'existing law must have placed the constitutionality of the officer's conduct beyond debate.'" 752 Fed. Appx. at 674 (citation omitted). The Court found that "Duke, like the detainee in *Martinez*, exhibited many common characteristics of intoxicated individuals but was responsive

14

and functioning." *Id.* Hence, the Tenth Circuit concluded "it is at least reasonably debatable that *Martinez* rather than *Garcia* provides the controlling precedent, and thus affirm[ed] the grant of qualified immunity to the individual defendants." *Id.*

Similar to the pretrial detainees in *Estate of Duke by & through Duke* and *Martinez*, Toledo "was responsive and functioning" when Defendants Lucero and Hildenbrant examined him. *See Estate of Duke by & through Duke*, 752 Fed. Appx. at 674. Accordingly, as in *Estate of Duke by & through Duke*, it is at least reasonably debatable that *Garcia*, which concerned an unconscious intoxicated pretrial detainee, does not provide controlling precedent in this case, which concerns a conscious pretrial detainee undergoing alcohol withdrawal. *Garcia*, therefore, does not provide clearly established law pertinent to Toledo's Fourteenth Amendment right to adequate medical care.

Plaintiff also seems to argue that Toledo's rights are clearly established based on the obvious clarity doctrine. Plaintiff contends that the objective component of the deliberate indifference standard, which requires a sufficiently serious and obvious medical risk, "if proved by a plaintiff will actually support the notion the law was clearly established in the first place" since that component provides fair notice of what conduct is unconstitutional. (Doc. 37) at 16. Plaintiff, however, does not cite any case law to support that contention. Moreover, such a contention would obviate the clearly established right requirement to defeat qualified immunity in inadequate medical care cases. Indeed, Plaintiff's contention is contrary to the principle that "the 'obvious clarity' scenario, is a 'narrow exception' to the 'normal rule that only case law and specific factual scenarios can clearly establish a violation.'" *J W by & through Tammy Williams*, 904 F.3d at 1260 (citation omitted). This Court rejects Plaintiff's obvious clarity argument.

15

Finally, Plaintiff cites *Harper v. Lawrence Cty., Ala*, in which the Eleventh Circuit stated its prior cases "established that a jail official who is aware of but ignores the dangers of acute alcohol withdrawal and waits for a manifest emergency before obtaining medical care is deliberately indifferent to the inmate's constitutional rights." *Harper,* 592 F.3d 1227, 1235 (11th Cir. 2010). As stated above, a right is clearly established when "a preexisting Supreme Court or Tenth Circuit decision, or the weight of authority from other circuits, … make it apparent to a reasonable officer that the nature of his conduct is unlawful." *Carabajal*, 847 F.3d at 1210. *Harper* is neither a preexisting Supreme Court decision nor a Tenth Circuit decision. Moreover, Plaintiff does not suggest, nor does she provide legal authority to assert, that a clearly established right in one outside circuit constitutes "the weight of authority from other circuits." *Cf. Woodward v. City of Worland,* 977 F.2d 1392, 1397 (10th Cir. 1992) (noting that "[n]ormally, a single recent case from one circuit is not sufficient to make the law clearly established in another circuit") (quoting Martin A. Schwartz & John E. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees* § 9.20, at 537 (2d ed. 1991)). Moreover, unlike the Eleventh Circuit's clearly established law, in this case neither Defendant Lucero nor Defendant Hildenbrant ignored Toledo's alcohol withdrawal symptoms and both provided Toledo with appropriate medications. Plaintiff has not convinced the Court that *Harper* clearly establishes a constitutional right with respect to pretrial detainees suffering from alcohol withdrawal who receive, at a minimum, appropriate medications.

For the above reasons, the Court determines that Plaintiff has not demonstrated that she meets the clearly established right requirement, the second qualified immunity prong, necessary to defeat qualified immunity. The Court concludes that Plaintiff has not carried her heavy burden of pleading sufficient facts to defeat qualified immunity as to Defendants Lucero and

16

Hildenbrant.  Accordingly, Defendants Lucero and Hildenbrant are entitled to qualified immunity with respect to Count I and the Court will dismiss Count I without prejudice as to Defendants Lucero and Hildenbrant.

IT IS ORDERED that

1. "Defendant[s] Lucero's and Hildenbrant's Motion to Dismiss Plaintiff's Claims Brought Under 42 U.S.C. § 1983 and for Qualified Immunity" (Doc. 27) is granted; and

2.  Count I of the Amended Complaint is dismissed without prejudice as to Defendants Lucero and Hildenbrant.

_____
UNITED STATES DISTRICT JUDGE