IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**NATALIA ANTONIO, as Personal Representative
to the Estate of RUBEN TOLEDO, deceased,**

    **Plaintiff,**

v.                                                              No. 1:19-cv-00572 KG/JFR

**BOARD OF COUNTY COMMISSIONERS FOR
THE COUNTY OF CIBOLA, ADRIANNE JARAMILLO,
LISA BURNSIDE, MICHAEL HILDEBRANDT,
AND MICHELLE LUCERO,**

    **Defendants.**

### DEFENDANTS' MOTION TO DISMISS COUNTS I AND IV OF PLAINTIFF'S FIRST AMENDED COMPLAINT BROUGHT UNDER 42 U.S.C. § 1983 AND FOR QUALIFIED IMMUNITY

COME NOW Defendants Board of County Commissioners for the County of Cibola ("the County"), Adrianne Jaramillo and Lisa Burnside, by and through their counsel, Jonlyn M. Martinez, Law Office of Jonlyn M. Martinez, LLC, and hereby move this Honorable Court to dismiss with prejudice Counts I and IV of the First Amended Complaint ("FAC"), under *Section 1983 of the Civil Rights Act of 1871,* 42 U.S.C. § 1983 ("Section 1983"), pursuant to Fed.R.Civ.P.12(b)(6),because they fail to state a claim on the merits against these Defendants, and because the only remaining Defendant being sued in her individual capacity is entitled to qualified immunity.[1]

---

[1] A Motion to Dismiss regarding the other two individual Defendants, Michelle Lucero, and Michael Hildebrandt, was already granted by this Court. [Doc. 45] Burnside was a Sergeant supervising other correctional officers [FAC ¶ 9]; she was not served until after that earlier MTD had been filed. [Doc. 42] Jaramillo is only being sued in her official capacity. [FAC ¶ 8] It is

Opposing counsel has indicated that they oppose same.

WHEREFORE, Defendants pray that this Honorable Court dismiss Counts I and IV of the FAC with prejudice, and grant Defendant Burnside qualified immunity, and for such other relief as is deemed appropriate.

In support of said Motion, Defendants state as follows:

## INTRODUCTION

As this Court is now aware, Plaintiff is the Personal Representative of Ruben Toledo, who was incarcerated in the Cibola County Detention Center ("CCDC") from June 21, 2017 to June 25, 2017, during which time Defendant Burnside was a Sergeant who supervised correctional officers there; she is not alleged to have any medical training. She is only being sued in her individual capacity under Section 1983 [FAC ¶ 3, 9-11], and she is the only remaining Defendant to Count I, alleging constitutionally inadequate medical care under Section 1983.The only allegations in the FAC regarding her involvement with Mr. Toledo concern being called to Mr. Toledo's cell on one occasion, after he had been seen by medical personnel. [FAC ¶ 73-80, 130, 135] For ease of reference, the factual allegations are as follows:

> 73. Defendant Burnside was called to Ruben's solitary cell, who observed him through his food port laying on the floor seizing.
> 74. Ruben's cell door was opened and officers entered.
> 75. Once Ruben stopped seizing, Defendant Burnside asked him if he was ok.
> 76. Ruben looked up at her but could not speak.
> 77. Defendant Burnside then noticed dried blood on Ruben's forehead.
> 78. It was apparent that Ruben had suffered a head injury in his cell, presumably while seizing alone in his solitary cell.
> 79. Rather than call 911, Defendant Burnside directed officers to take Ruben to the shower to clean up.

---

alleged in a wholly conclusory way that "Defendant Jaramillo practiced a custom and policy of providing inadequate medical care to inmates at CCDC." [FAC at ¶ 184].

2

> 80. In the meantime, Defendant Burnside went to find Ruben a new isolation cell to be housed in.

Of course, the Plaintiff's conclusory allegations that Defendant Burnside knew that Mr. Toledo was seizing lack the requisite factual basis. Defendant Burnside is not a medical provider, she interacted with Mr. Toledo for a short period of time, she decided that he should be cleaned up and left to find him a new cell. On its face, it is clear that Ms. Burnside's conduct did not rise to the level of deliberate indifference.

As for the allegations pled in Count I, the vast majority of them conclusory allege only what "Defendants" in the aggregate knew, principally related to alcohol withdrawal symptoms, even though it is readily apparent that any such knowledge was necessarily unique to certain Defendants, and could not plausibly include this Correctional Officer. [See, e.g., FAC ¶ 103-128, 131-34, 136-142] Indeed, she is not alleged to have any knowledge whatsoever of the condition for which he purportedly required medical care. Rather, the only allegations regarding this Defendant in Count I of the FAC are as follows:

> 130. Instead, Defendant Burnside decided to carry Ruben to the shower to "clean up."

> 135. Instead of calling medical staff or 911, Defendant Burnside searched for a new solitary cell to rehouse Ruben after his seizure.

However, paragraph 130 is wholly implausible in light of the earlier factual allegations:

> 79. Rather than call 911, Defendant Burnside directed officers to take Ruben to the shower to clean up.

> 80. In the meantime, Defendant Burnside went to find Ruben a new isolation cell to be housed in.

*See* FAC. Thus, based on the Plaintiff's factual allegations, Defendant Burnside had no role whatsoever in carrying the Plaintiff to the shower, because after the brief encounter in the cell,

3

she left to find him another cell. Therefore, Defendant Burnside could not know that Mr. Toledo was allegedly unresponsive and unable to walk because she was not there. *Id*.

Count IV is solely against Defendant Jaramillo as the Administrator of the CCDC, although it is not alleged for what period of time, she held this position. However, it is clear that she was not the Administrator at the time of the only other alleged incident which is relied upon to claim that there was a custom or practice of inadequate medical care. [FAC ¶ 192] Assuming for purposes of this Motion that she would be deemed a final policy maker, these allegations are wholly conclusory, and are insufficient to establish that there was any policy, custom or practice in this regard. [FAC ¶ 193-196]

## ARGUMENT

### STANDARD OF REVIEW

Pursuant to Fed.R.Civ.P. 12(b)(6), it has long been held that dismissal is appropriate "when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." ***Yoder v. Honeywell, Inc.***, 104 F.3d 1215, 1224 (10th Cir.) (internal quotations omitted), ***cert. den***. 118 S.Ct. 55 (1997).  Conclusory allegations are not "well-pleaded," and thus are not taken as true for purposes of a Motion to Dismiss. ***Hall v. Bellmon,*** 935 F.2d 1106, 1110 (10th Cir. 1991). A complaint must include enough facts to state a claim for relief that is "plausible on its face" and to "raise a right to relief above the speculative level." ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The complaint need not include detailed factual allegations, but it must provide more than "a formulaic recitation of the elements of a cause of action." ***Id***. A claim is facially plausible when plaintiff has alleged enough factual content for the court to draw

a reasonable inference that the defendant is liable for the misconduct alleged. ***Ashcroft v. Iqbal***, 556 U.S. 662, 677, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

As the Tenth Circuit explained, "[t]his requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." ***Robbins, supra***, 519 F.3d at 1248.  In ***Ashcroft v. Iqbal,*** 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009), the Supreme Court expanded on the principles in ***Twombly***:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

The degree of specificity "depends on context," and there, as here, the context was "a claim of qualified immunity by state officials or employees who were sued for damages in their personal capacity for injuries …." ***Robbins, supra***, 519 F.3d at 1248.

> Although we apply "the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally," *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1200 (10th Cir.2007), complaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants. The Twombly standard may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity "at the earliest possible stage of a litigation." [Citations omitted]

***Robbins, supra***, 519 F.3d at 1249. This standard must be considered in light of the requirement that Section 1983 liability must be based on personal acts of the individual sought to be held liable.

**INDIVIDUAL CAPACITY CLAIMS**

As noted above, while the Complaint alleges that Defendant Burnside is being sued in her individual capacity, it must be noted that an individual cannot be sued in their individual capacity except for acts they specifically are alleged to have performed. *See White v. Braley*, 172 F.3d 880 (10th Cir. 1999)("Mr. White also failed to allege that a named defendant was personally responsible for delaying his… hearing. '[P]ersonal participation is an essential allegation to a Section 1983 claim.'" *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (citation omitted)). But the only allegation against this Defendant are the couple of moments when Mr. Toledo was found on the floor of his cell, and she made arrangements for him to be cleaned up and left to find him a cell. *See* FAC ¶¶'s 79-80.  Obviously, these actions are not the actions of one who perceives a medical emergency. Therefore, she is entitled to qualified immunity, as set forth below.

**COUNT I SHOULD BE DISMISSED WITH PREJUDICE**

As this Court has recognized: "Under the Fourteenth Amendment's due process clause, pretrial detainees … are entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment." *Barrie v. Grand County, Utah*, **119** F.3d 862, 867 (10th Cir. 1997).[Doc. 45 at 7] In *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Id*. at 104 (citation omitted) (quotations omitted). Prison doctors and prison guards may thus be liable under § 1983 for "indifference . . . manifested . . . in their response to the prisoner's needs or by . . . intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." *Id*. at 104-05 (footnotes omitted). It is therefore "proper to apply a due process standard which protects pretrial detainees against

6

deliberate indifference to their serious medical needs." *Garcia v. Salt Lake Cnty*., 768 F.2d 303, 307 (10th Cir. 1985).

> To state a potentially cognizable claim pursuant to these standards, a plaintiff must satisfy a two-pronged test. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Id.*

*Walton v. Gomez (In re Estate of Booker)*, 745 F.3d 405, 429-30 (10th Cir. 2014). In the present case, the allegations in the FAC do not establish either of the requisite prongs required to establish an alleged due process claim against Defendant Burnside.

Given that this Defendant is not a medical professional, Plaintiff would have to establish that she had assumed "gate keeping" authority over Plaintiff's access to medical professionals, and Plaintiff's specific burden would be to demonstrate that this Defendant denied or delayed him access to medical care in conscious disregard of a substantial risk of serious harm. However, it is evident from the allegations of the Complaint that this burden cannot be met. The only encounter this Defendant is alleged to have had was momentary, where she spoke to him and then she departed on a mission to find him another suitable cell. *See* FAC ¶¶'s 79-80. There is no allegation that Defendant Burnside knew and understood that Mr. Toledo was gravely ill and was then deliberately indifferent to his needs. Instead, it is alleged that she had Mr. Toledo taken to the shower by other officers so that he could clean up. *See* FAC ¶¶'s 82-83. There is no allegation that Ms. Burnside observed Mr. Toledo being taken to the shower or that she was aware of what allegedly transpired in the shower.

In this instance it is not clear what harm Plaintiff is alleging specific to this Defendant, given that her presence is brief and late in the timeline of events. See *Mata v. Saiz,* 427 F.3d 745, 753–55 (10th Cir. 2005):

> Of course, a prisoner must be careful in selecting what harm to claim. The prisoner may be better off claiming some intermediate harm rather than the last untoward event to befall her. After all, the prisoner may not be able to prove that this last event was caused by any government actor or that the actor who caused the event acted with the requisite culpable state of mind. Accordingly, the prisoner's claim may be based, for example, on intolerable chest pain rather than the subsequent heart damage. Once the prisoner selects the harm, however, the focus of the objective prong should be solely on whether that harm is sufficiently serious.

But even assuming the objective prong of the test could be established as to this Defendant, it is readily apparent that the subjective prong and causation cannot be established on this pleading. See *Quintana v. Santa Fe County Bd. of Commissioners*, 2019 WL 452755, at 63 (D.N.M. Feb. 5, 2019):

> Under Tenth Circuit caselaw, each official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Mata v. Saiz*, 427 F.3d at 751 (quoting *Farmer v. Brennan*, 511 U.S. at 837). Although the Plaintiffs' allegations suggest that each of the individual Defendants was plausibly aware of facts from which they could have drawn the inference that a substantial risk of serious harm existed, the Plaintiffs do not allege facts that plausibly show that any of the individual Defendants drew the inference and believed Ortiz to be at a risk greater than the pain expected as part of heroin withdrawal.

Indeed, the circumstances regarding the correctional officials' involvement was substantially greater in that case—it went on for days, and they did not even bother to clean up the cell--and still the Court held both that the constitutional rights of the prisoner had not been violated, and that the correctional and medical personnel were entitled to qualified immunity.

**THIS DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY**

"[G]overnmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ***Harlow v. Fitzgerald***, 457 U.S. 808, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity is designed to prevent the "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Harlow, supra,* 457 U.S., at 816, 102 S.Ct., at 2737. Specifically, the policy underpinnings of this doctrine involve "strik[ing] a balance 'between the need, on one hand, to hold responsible public officials exercising their power in a wholly unjustified manner and, on the other hand, to shield officials responsibly attempting to perform their public duties in good faith from having to explain their actions to the satisfaction of a jury.' " ***Locurto v. Safir***, 264 F.3d 154, 162-63 (2d Cir.2001) (***quoting Kaminsky v. Rosenblum***, 929 F.2d 922, 924-25 (2d Cir.1991)). The doctrine recognizes that officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages and only if unjustified lawsuits are quickly terminated. ***Butz v. Economou***, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

In this case, Defendant Burnside is entitled to qualified immunity because there is no act for which she is allegedly responsible that could possibly violate the constitutional rights of Plaintiff herein. The presumption in favor of finding qualified immunity is necessarily high, protecting "all but the plainly incompetent or those who knowingly violate the law." ***Malley v. Briggs***, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) Where "officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." *Id.* Simply stated,

qualified immunity ensures "that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz,* 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

In determining whether the law was clearly established, we ask whether the Plaintiff has "identif[ied] an on-point Supreme Court or published Tenth Circuit decision: 'the clearly established weight of authority from other courts must have found the law to be as [he] maintains.'" *Tanner v. McMurray*, 429 F. Supp. 3d 1047, 1205-06 (D.N.M. 2019), quoting *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015)(quoting *Weise v. Casper*, 593 F.3d 1163, 167 (10th Cir. 2010). Existing precedent must have placed the . . . constitutional question beyond debate. *Id*., quoting *White v. Pauly*, ___ U.S. ___, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 . . . (2017)(quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 . . . (1987),(warning courts not to define the clearly established right "at a high level of generality" (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 742, 131 S. Ct. 2074 (2011). In other words, to demonstrate the law was clearly established, a plaintiff must identify a case in which a defendant "acting under similar circumstances" as Defendant Burnside "was held to have violated" the Eighth or Fourteenth Amendments.

Finally, this Circuit has held that, in the event it is determined that the right at issue was "clearly established," it becomes defendant's burden to prove that the conduct was nonetheless objectively reasonable. *Cannon v. City & County of Denver*, 998 F.2d 867, 874 (10th Cir.1993). The reason for this additional inquiry is to ensure that the unlawfulness of the defendant's conduct was apparent under existing law, since qualified immunity is "intended to provide government officials with the ability 'reasonably [to] anticipate when their conduct may give rise to liability for damages.' " *Mimics, Inc. v. Village of Angel Fire*, 277 F. Supp. 2d 1131, 1139 (D.N.M.2003), (quoting *Anderson v. Creighton,* 483 U.S. 635, 646, 107 S.Ct. 3034, 97 L.Ed.2d

10

523 (1987) (alteration in original), quoting **Davis v. Scherer**, 468 U.S. 183, 195, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)). As established above, Defendant Burnside submits that no constitutional violation of any kind has been adequately alleged herein, much less a clearly established one, and that her actions under the circumstances were objectively reasonable.

## COUNT IV SHOULD BE DISMISSED WITH PREJUDICE

This Count is solely against Defendant Jaramillo in her official capacity, but it is well established that Section 1983 claims against individuals in their official capacity is simply redundant of a suit against the entity. "[A]n official capacity claim is, in all respects other than name, to be treated as a suit against the entity." **Kentucky v. Graham,** 473 U.S. 159, 165-6, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985). In order to maintain such a claim against the employing entity, Plaintiff would have to have sufficiently alleged that whatever harm befell Mr. Toledo was the result of an unconstitutional policy related to said harm, in this instance, inadequate medical care. **See Monell v. Dep't of Social Services**, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

To establish such municipal liability herein, Plaintiff must demonstrate: (i) that an officer committed the underlying constitutional violation; (ii) that a municipal policy or custom exists; and (iii) that there is a direct causal link between the policy or custom, and the injury alleged. **See Graves v. Thomas,** 450 F.3d 1215, 1218 (10th Cir. 2008). In the first place, there simply is not a constitutional violation by any individual, as established above.

> The Jail Defendants are correct that the Monell claim is not a separate, stand-alone claim "for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Okin v. Village of Cornwall–On–Hudson Police Dep't*, 577 F.3d 415, 439 (2d Cir.2009)(emphasis in original). Of course, the Monell liability fails if M. Romero cannot prove a constitutional violation in

her other counts. *See Graves v. Thomas*, 450 F.3d at 1218. In other words, if the Defendants show that they did not violate A. Romero's constitutional rights, then the Court must dismiss the Monell claim.

***Romero v. Bd. of County Commissioners for the County of Curry,*** 202 F. Supp. 3d 1223, 1266–68 (D.N.M. 2016).

Further, of course there is no formal policy that violated Mr. Toledo's rights. In addition, the Plaintiff has failed to establish any custom or practice that violated Mr. Toledo's rights.

> The plaintiff cannot simply allege that there is a policy in place, but, rather, must plead facts that, if true, would give rise to a plausible inference that such a policy exists. With formal or written policies, satisfying this pleading standard is easy; the plaintiff can simply allege what the policy is and where it is codified. With informal, unwritten policies, customs, or practices, the plaintiff can plead either a pattern of multiple similar instances of misconduct -- no set number is required, and the more unique the misconduct is, and the more similar the incidents are to one another, the smaller the required number will be to render the alleged policy plausible -- or use other evidence, such as a police officers' statements attesting to the policy's existence. The Tenth Circuit has not explicitly held that to be pleading requirements, but they have implied that district courts should analyze policies, practices, or customs under *Monell* as "legal conclusions" at the pleading stage -- which must evidence factual support, rather than conclusorily alleged -- and not "facts" in and of themselves, to be taken as true at face value…

***Ward v. City of Hobbs***, 398 F. Supp. 3d 991, 1039 (D.N.M. 2019), ***appeal dismissed, Ward v. City of Hobbs****,* 2019 WL 8064625 (10th Cir. Nov. 25, 2019). Indeed, as that same court recognized:

> [T]he mere allegation of a single act of unconstitutional conduct by a municipal employee will not support the inference that such conduct was pursuant to official policies. On the other hand, where the plaintiff alleges a pattern or a series of incidents of unconstitutional conduct, then the courts have found an allegation of policy sufficient to withstand a dismissal motion. *Powe v. City of Chi*., 664 F.2d 639, 650 (7th Cir. 1981).

***Ward v. City of Hobbs***, *supra*, 398 F. Supp. 3d at 1040. While Plaintiff has alleged just one other incident, which on its face is insufficient to establish any pattern, that earlier incident was

admittedly under a former administrator and involved other employees. Therefore, the Plaintiff failed to establish any pattern with respect to Administrator Jaramillo. Thus, even if one were to assume that Plaintiff could establish a constitutional violation herein, which is denied, it obviously was not the result of a policy.

## CONCLUSION

For all the foregoing reasons, Defendants submit that Counts I and IV of the FAC should be dismissed with prejudice, and that Defendant Burnside should be afforded qualified immunity, and for such further relief as this Court deems appropriate.

Respectfully submitted,

LAW OFFICE OF JONLYN M. MARTINEZ, LLC

By */s/ Jonlyn M. Martinez*
JONLYN M. MARTINEZ
Attorneys for County Defendants
P.O. Box 1805
Albuquerque, NM  87103-1805
(505) 247-9488

I HEREBY CERTIFY that a true copy
of the foregoing was sent via
CM/ECF to all counsel of record
on September 15, 2020:

_____/s/_____