IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**NATALIA ANTONIO, as Personal Representative
to the Estate of RUBEN TOLEDO, deceased,**

      **Plaintiff,**

v.                                  No. 1:19-cv-00572 KG/JFR

**BOARD OF COUNTY COMMISSIONERS FOR
THE COUNTY OF CIBOLA, ADRIANNE JARAMILLO,
LISA BURNSIDE, MICHAEL HILDEBRANDT,
AND MICHELLE LUCERO,**

      **Defendants.**

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS BOARD OF COUNTY COMMISSIONERS FOR THE COUNTY OF
CIBOLA, LISA BURNSIDE, AND ADRIANNE JARAMILLO'S MOTION TO DISMISS
COUNTS I AND IV OF PLAINTIFF'S AMENDED COMPLAINT**

COME NOW Defendants Board of County Commissioners for the County of Cibola ("the County"), Adrianne Jaramillo and Lisa Burnside, by and through their counsel, Law Office of Jonlyn M. Martinez, LLC, and hereby reply to Plaintiff's Response In Opposition To Defendants Board Of County Commissioners For The County Of Cibola, Lisa Burnside, And Adrianne Jaramillo's Motion To Dismiss Counts I And IV of Plaintiff's Amended Complaint as follows:

**REPLY TO INTRODUCTION**

The Plaintiff has included an argumentative version of the facts The relevant factual allegations related to Defendants Cibola County, Adrianne Jaramillo and Lisa Burnside are only the well-pled factual allegations contained in the Plaintiff's Complaint. The Plaintiff's conclusory allegations that Defendant Burnside knew that Mr. Toledo was suffering from a

seizure lack the requisite factual basis. Defendant Burnside is not a medical provider, she interacted with Mr. Toledo for a short period of time, she made a determination that he should be cleaned up and left to find him a new cell. [Document No. 3, ¶¶ 79-80]. Based on these allegations, Defendant Burnside's conduct did not rise to the level of deliberate indifference. Defendant Burnside had no role whatsoever in carrying the Plaintiff to the shower, because after the brief encounter in the cell, she left to find him another cell. [Document No. 3, ¶ 79] Therefore, Defendant Burnside could not know that Mr. Toledo was allegedly unresponsive and unable to walk because she was not present. [Document No. 3, ¶¶ 79-80].

Count IV is solely against Defendant Jaramillo as the Administrator of the CCDC, although it is not alleged for what period of time, she held this position. However, it is clear that she was not the Administrator at the time of the only other alleged incident which is relied upon to claim that there was a custom or practice of inadequate medical care. [Document No. 3, ¶ 192, "Shortly after Mr. Edmisten's case settled, Defendant Jaramillo replaced Michael Dodds as the administrator Dodds as the administrator of CCDC."] Assuming for purposes of this Motion that she would be deemed a final policy maker, the Plaintiff has alleged no well-pled factual allegations that would entitle her to relief against Defendants County and Jaramillo.

**STANDARD OF REVIEW**

It is unclear why the Plaintiff cites authority decided before ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 127 S. Ct. 1955 (2007). However, a District Court in this jurisdiction has stated the following with regard to the appropriate standard:

> A complaint need not make detailed factual allegations, but a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555)(internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v.

> Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (citation omitted).
>
> To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted).

***Benavidez v. Sandia Nat'l Labs.***, No. CIV 15-0922 JB/LF, 2017 U.S. Dist. LEXIS 95641, at *116-17 (D.N.M. June 21, 2017). In the present case, the Plaintiff's Amended Complaint does not contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.

## ARGUMENT

**A. Defendant Burnside Had Not Been Served With Plaintiff's Complaint When the First Motion to Dismiss was Filed. Therefore, the Defendant Had No Choice But To File Multiple Motions.**

The Plaintiff's Response acknowledges that Defendant Burnside was not served with the Plaintiff's Amended Complaint until thirty-six (36) days after the Defendant filed their Motion to Dismiss. ***See Plaintiff's Response*** [Document No. 51, at p. 4]. The record reflects that the Defendants filed their Reply Brief concerning their initial Motion to Dismiss on January 19, 2020. [Document No. 38]. Defendant Burnside was not served with the Plaintiff's Amended Complaint until February 3, 2020. [Document No. 42]. Therefore, the Defendant could not have included Defendant Burnside in its initial motion because she was not properly before the Court. The Defendant did not include the Plaintiff's ***Monell*** claims against Defendant Cibola County

and Defendant Jaramillo because the Plaintiff made clear that she was going to serve Defendant Burnside with her Complaint. [[Document No. 25]. Defendant Cibola County and Defendant Jaramillo could not move to dismiss the *Monell* claims against them until the claims against Defendant Burnside could be decided by this Court. Therefore, the Defendants' motion practice is appropriate under the circumstances.

 The Plaintiff's reliance on *Vera v. Rodriguez*, No. 16-491 SCY/KBM, 2017 U.S. Dist. LEXIS 214476, at *6 (D.N.M. Dec. 27, 2017), is misplaced, as the Court in *Vera* denied the Plaintiff's Motion to Prohibit Piecemeal Motion Practice. In *United States v. Copar Pumice Co.*, No. 09-1201 JP/KBM, 2013 U.S. Dist. LEXIS 197525, at *14-15 (D.N.M. Sep. 12, 2013) the Court limited each side, represented by the same attorney, to a single summary judgment motion supported by a single legal memorandum. The Court in *Copar* stated:

> The Court considered Defendants' position that each individual Defendant has separate and unique factual and legal defenses that warrant "individual responses" and "separate consideration" by the Court. (Doc. No. 386 at 1.) However, requiring a joint, single summary judgment motion does not prevent individual Defendants from raising "separate and unique" facts and defenses. Moreover, the Court observes that these five Defendants previously have filed a number of joint motions. They have been represented by a single attorney for over three and half years (before filing the recent motion to withdraw).

*Id*. As set forth above, a comprehensive motion concerning all Defendants could not be filed because it was not ripe at the time the first dispositive motion was filed. Therefore, the Defendants request that this Court consider this Motion to Dismiss.

 **B. Defendant Burnside Is Entitled To Qualified Immunity.**

 The Plaintiff argues that Defendant Burnside is not entitled to qualified immunity because the law is clearly established that prison officials may not act with deliberate indifference to

a serious and obvious medical need of a person under their care. [Document No. 51, at p. 6]. In support of her argument, the Plaintiff cites *Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005). However, *Mata* states that the subjective prong of the deliberate indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind. *Id*., at 751, citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

> The subjective component is satisfied if the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference." *Farmer*, 511 U.S. at 837. A prison medical professional who serves "solely . . . as a gatekeeper for other medical personnel capable of treating the condition" may be held liable under the deliberate indifference standard if she "delays or refuses to fulfill that gatekeeper role." *Sealock*, 218 F.3d at 1211; *see also Estelle*, 429 U.S. at 104-105 (deliberate indifference is manifested by prison personnel "in intentionally denying or delaying access to medical care").

*Id*. Similarly in *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006), the Tenth Circuit stated "[t]he subjective component "is met if a prison official 'knows of and disregards an excessive risk to inmate health or safety.'" The Plaintiff has alleged that Defendant Burnside was a sergeant within the detention center, not a healthcare provider. [Document No. 3, at ¶ 9]. Plaintiff's conclusory allegations that Mr. Toledo was suffering from a seizure which Defendant Burnside observed are not well-pled factual allegations. The Plaintiff has pled no facts, nor could she, that Defendant Burnside knew and understood that Mr. Toledo was suffering from a seizure.[1] The Plaintiff has failed to factually describe anything other than Mr. Toledo laying on the floor of his cell with dried blood on his forehead. [Document No. 3, ¶¶ 73 and 77]. Moreover, Plaintiff's claims against Defendant Burnside are belied by Plaintiff's remaining

---

[1] The Plaintiff's arguments concerning Defendant Burnside's alleged knowledge of Mr. Toledo's purported deterioration is speculation and does not satisfy the pleading standard of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).

5

allegations that Defendant Burnside spoke to Mr. Toledo, that he looked at her and that Defendant Burnside ordered that he be cleaned up and then went to find him a new clean cell. [Document No. 3, ¶¶ 75 and 79-80].[2] These facts establish that Defendant Burnside did not know or understand that Mr. Toledo required medical attention. Thus, the Plaintiff's Amended Complaint contains no factual allegations that Defendant Burnside knew of and disregarded an excessive risk to Mr. Toledo's health or safety.

Next, the Plaintiff argues that Courts have consistently denied qualified immunity where a jail official disregards the serious dangers of alcohol withdrawal. *See Plaintiff's Response* [Document No. 51, p. 7]. In support of her argument, the Plaintiff cites *Paugh v. Uintah Cty.*, No. 2:17-cv-01249 JNP-CMR, 2020 U.S. Dist. LEXIS 145141, at *76 (D. Utah Aug. 11, 2020), which provides:

> Plaintiffs can defeat qualified immunity by demonstrating that a reasonable jury could find the individual defendants committed "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Self*, 439 F.3d at 1230 (internal quotation marks omitted). "[C]laims alleging inadequate or delayed medical care . . . involve both an objective and a subjective component." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001). "The objective prong of the deliberate indifference test examines whether the prisoner's medical condition was 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause." *Al-Turki*, 762 F.3d at 1192 (citation omitted). [*76] "The subjective prong examines the state of mind of the defendant, asking whether 'the official knew of and disregarded an excessive risk to inmate health or safety.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

*Paugh v. Uintah Cty.*, No. 2:17-cv-01249 JNP-CMR, 2020 U.S. Dist. LEXIS 145141, at *75-76 (D. Utah Aug. 11, 2020). *Paugh* requires that the Plaintiff establish both the objective standard, requiring Plaintiff to produce objective evidence that Mr. Toledo's medical need had been

---

[2] The Plaintiff argues that Defendant Burnside was aware that Mr. Toledo could not walk and that he was covered in his own bodily fluids. *See Plaintiff's Response* [Document No. 51, p. 11]. However, the Plaintiff's Amended Complaint contains no allegations establishing that Defendant Burnside was aware of these alleged facts.

6

diagnosed by a physician as mandating treatment or was so obvious that even a lay person would easily recognize the necessity for a doctor's attention and the subjective standard set forth above.

In the present case, the Plaintiff has alleged that on June 23, 2017, Mr. Toledo was seen by Defendant Lucero, a physician's assistant . [Document No. 3, ¶ 33].[3] Defendant Lucero did not provide any treatment for Mr. Toledo's alcohol withdrawal. [*Id*., at ¶ 37]. Instead, Defendant Lucero ordered that Mr. Toledo be given blood pressure medication and medication for his diabetes. [*Id*., at ¶ 38]. Later that day, Mr. Toledo told medical staff he was experiencing alcohol withdrawal and was hallucinating. [*Id*., at ¶ 46]. Mr. Toledo was then placed on an alcohol withdrawal protocol. [*Id*., at ¶ 50]. Thus, any contention that Mr. Toledo's medical condition was so obvious that even a lay person would recognize the need for a doctor's attention is belied by the allegations contained in the Plaintiff's Amended Complaint. The healthcare providers that interacted with the Plaintiff did not note his alleged alcohol withdrawal, but instead noted and treated his hypertension and diabetes. Thus, the objective component of the qualified immunity analysis cannot be met. As set forth above, the subjective component also cannot be met. The Plaintiff's Amended Complaint contains no factual allegations that Defendant Burnside knew of and disregarded an excessive risk to Mr. Toledo's health or safety. Thus, based on the Plaintiff's allegations contained in her Amended Complaint, Defendant Burnside is entitled to qualified immunity.

Next, the Plaintiff cites *Quintana v. Santa Fe Cty. Bd. of Comm'rs*, 973 F.3d 1022 (10th Cir. 2020), for the proposition that the Tenth Circuit reversed a dismissal on the face of the complaint for a guard who disregarded an inmate experiencing dangerous withdrawals. *See Plaintiff's*

---

[3] Plaintiff's federal claims against Defendant Lucero were dismissed by this Court. *See Memorandum Opinion and Order dated September 2, 2020* [Document No. 45].

*Response* [Document No. 51, at pp's 8-9]. However, the facts of *Quintana* are dissimilar from the case at bar. The facts in *Quintana* are as follows:

> Ortiz was arrested and booked into ADF on January 4, 2016. After booking, Defendant Nurse Anne Robinson conducted a medical intake exam, apparently without completing various intake forms. During the exam, Nurse Robinson determined that Ortiz was dependent on heroin and would likely undergo withdrawal. She therefore offered Ortiz a set of medications known as a "kick kit." The plaintiffs allege the kick kit was never administered.
>
> The other individual defendants—Corporal Gallegos and Officers Chavez, Valdo, Lopez, and Garcia—supervised or interacted with Ortiz in some capacity between his medical exam on January 4 and his death on January 7. By their own admission, they were aware that Ortiz was experiencing withdrawal symptoms. They did not attempt to provide any further medical assistance, and Ortiz did not request any further treatment.
>
> On January 7, Officer Garcia found Ortiz unresponsive and disrobed in his cell, the floors and walls of which were partially covered in feces and bodily fluids. Attempts to revive him were unsuccessful. Following an autopsy, it was concluded that Ortiz "died of an acute gastrointestinal hemorrhage due to probable heroin withdrawal." App., Vol. 1 at 34.

*Quintana v. Santa Fe Cty. Bd. of Comm'rs*, 973 F.3d 1022, 1027 (10th Cir. 2020). In the present case, the Plaintiff has alleged that Defendant County was providing Mr. Toledo with his withdrawal medication; Mr. Toledo was placed on an alcohol withdrawal protocol [Document No. 3, ¶ 50]; a medical assistant gave Mr. Toledo his medication. [*Id*., ¶ 62]; a few hours later, this medical assistant returned to check on Mr. Toledo. [*Id*., ¶ 68]. The Plaintiff does not allege that Defendant Burnside knew and understood that Mr. Toledo was suffering from withdrawal symptoms. In addition, the Plaintiff's Amended Complaint contains no factual allegation that Mr. Toledo died of alcohol withdrawal. Instead, the Plaintiff's Complaint alleges that Mr. Toledo was dehydrated and did not regain consciousness after being hospitalized. [*Id*., ¶¶ 94 and 97].

In affirming the district court's decision to dismiss the plaintiff's federal claims against some individually named defendants the Court in *Quintana* stated:

> The complaint alleges only that Officer Lopez knew Ortiz had vomited in his cell and exhibited other common signs of withdrawal. Absent something more—like knowledge of *bloody* vomit—the complaint does not plausibly allege deliberate indifference to serious withdrawal. *See Martinez*, 563 F.3d at 1091 (concluding that "characteristics . . . common to many intoxicated individuals" were not "obvious symptoms indicating a risk of serious harm"). We accordingly conclude the complaint does not plausibly allege that Officer Lopez disregarded a substantial risk of serious harm to Ortiz.

*Quintana v. Santa Fe Cty. Bd. of Comm'rs*, 973 F.3d 1022, 1030-31 (10th Cir. 2020). The Plaintiff's claims against Defendant Burnside are similarly deficient.

Next, the Plaintiff maintains that *Quintana* relied only on *Estelle's* plain terms rather than a factually identical case to find the law was clearly established. *See Plaintiff's Response* [Document No. 51, at p 9]. However, this argument is without merit. In *Quintana,* the Court acknowledged the holding in *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015), which requires that "existing precedent must have placed the statutory or constitutional question beyond debate." *Quintana,* at 1031. The Tenth Circuit further stated:

> No Tenth Circuit authorities support the conclusion that Officer Valdo, Officer Lopez, Officer Garcia, and Corporal Gallegos violated Ortiz's clearly established right to medical treatment. Nor can we read out-of-circuit authorities that address medical conditions other than withdrawal from heroin to place the lawfulness of their conduct "beyond debate." *See Mullenix*, 136 S. Ct. at 308.
>
> No authority, in our view, clearly establishes with the requisite degree of specificity that the officers violated Ortiz's constitutional right to medical care for symptoms associated with heroin withdrawal. *See id.* (emphasizing that "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established"(emphasis in original) (quotation marks omitted)). In the absence of such authorities, we conclude the complaint does not plausibly allege Corporal Gallegos or Officers Valdo, Lopez or Garcia breached clearly established law.

*Quintana v. Santa Fe Cty. Bd. of Comm'rs*, 973 F.3d 1022, 1032-33 (10th Cir. 2020). In the present case the Plaintiff has failed to provide this Court with any authority that establishes that failing to provide an inmate with immediate medical care when he is found lying on the floor of

his cell with blood on his forehead violates clearly established law. Thus, Defendant Burnside is entitled to qualified immunity and the Plaintiff's federal claim against her must be dismissed with prejudice.

**Plaintiff's Official Capacity Claims Should Be Dismissed With Prejudice.**

The Plaintiff maintains that Defendants County and Jaramillo were the moving force behind Plaintiff's injuries. *Plaintiff's Response* [Document No. 51, at p. 14]. The Plaintiff's Complaint cites to only one other instance of alleged misconduct to support her allegation of custom and policy of violating constitutional rights in Count IV. [Document No. 3, ¶¶'s 185]. However, Defendant Jaramillo was not employed by Defendant Cibola County at the time of this prior alleged incident. [Document No. 3, ¶¶'s 193]. In addition, the Plaintiff's Complaint contains no factual allegations concerning Defendant Jaramillo, only conclusory allegations that are insufficient to establish the Plaintiff's claims in Count IV. The Plaintiff's Complaint does not cite to an official policy that denied Mr. Toledo access to medical care, nor could she because no such policy exists. The case cited by Plaintiff, *Simmons v. Uintah Health Care Special Serv. Dist.*, 506 F.3d 1281 (10th Cir. 2007), provides that municipalities cannot be held liable for unauthorized actions by their employees:

> Under Section 1983, municipalities cannot be held liable for the actions of others under the common law principle of *respondeat superior;* they are responsible only for their *own* actions. *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658, 691-95, 98 S. Ct. 2018, 56 L. Ed. 2d 611; *Pembaur v. City of Cincinnati,* 475 U.S. 469, 478-80, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). When employees take actions specifically authorized by policy or custom, their actions can be fairly said to be the municipality's. But when they act inconsistently with official policy or custom, though perhaps even still within the scope of employment, that will not suffice.

*Simmons*, at 1284. Thus, absent any well-pled factual allegations that Defendant County

10

and Defendant Jaramillo directed someone to violate Mr. Toledo's rights, the Plaintiff's claims fail.

> The plaintiff cannot simply allege that there is a policy in place, but, rather, must plead facts that, if true, would give rise to a plausible inference that such a policy exists. With formal or written policies, satisfying this pleading standard is easy; the plaintiff can simply allege what the policy is and where it is codified. With informal, unwritten policies, customs, or practices, the plaintiff can plead either a pattern of multiple similar instances of misconduct -- no set number is required, and the more unique the misconduct is, and the more similar the incidents are to one another, the smaller the required number will be to render the alleged policy plausible -- or use other evidence, such as a police officers' statements attesting to the policy's existence. The Tenth Circuit has not explicitly held that to be pleading requirements, but they have implied that district courts should analyze policies, practices, or customs under Monell as "legal conclusions" at the pleading stage -- which must evidence factual support, rather than conclusorily alleged -- and not "facts" in and of themselves, to be taken as true at face value…

*Ward v. City of Hobbs*, 398 F. Supp. 3d 991, 1039 (D.N.M. 2019), *appeal dismissed*, *Ward v. City of Hobbs,* 2019 WL 8064625 (10th Cir. Nov. 25, 2019). While the Plaintiff alleges that Defendant Jaramillo continued unconstitutional policies and practices that were in place before her tenure, this allegation is conclusory and lacks any factual basis. The Plaintiff has not alleged that Defendant Jaramillo issued a similar order with regard to Mr. Toledo, nor has the Plaintiff alleged that Defendants County and Jaramillo refused to transport all inmates from the Cibola County Detention Center for emergency treatment. Absent well-pled factual allegations in this regard, the Plaintiff's Amended Complaint fails to state a claim for which relief can be granted as to Defendants County and Jaramillo.

## CONCLUSION

For all the foregoing reasons, Defendants submit that Counts I and IV of the Plaintiff's First Amended Complaint should be dismissed with prejudice, and that Defendant Burnside should be afforded qualified immunity, and for such further relief as this Court deems appropriate.

        Respectfully submitted,

        LAW OFFICE OF JONLYN M. MARTINEZ, LLC

       By  */s/ Electronically filed*
         JONLYN M. MARTINEZ
         Attorneys for County Defendants
         P.O. Box 1805
         Albuquerque, NM  87103-1805
         (505) 247-9488

I HEREBY CERTIFY that a true copy
of the foregoing was sent via
CM/ECF to all counsel of record
on November 3, 2020:

   /s/