IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NATALIA ANTONIO, a Personal Representative
To the Estate of RUBEN TOLEDO, deceased,

    Plaintiff,

vs.                                                                                                  Civ. No. 19-572 KG/JFR

BOARD OF COUNTY COMMISSIONERS FOR
THE COUNTY OF CIBOLA, ADRIANNE JARAMILLO,
LISA BURNSIDE, MICHAEL HILDENBRANT,
AND MICHELLE LUCERO,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On July 1, 2017, Ruben Toledo died at the University of New Mexico Hospital. He had been transferred there from Cibola General Hospital, where he had undergone emergency medical attention due to a loss of consciousness and severe seizure episodes while a pretrial detainee at the Cibola County Detention Center (CCDC). Toledo's personal representative filed this lawsuit against Defendants, including the Board of County Commissioners for the County of Cibola (Defendant County), the CCDC administrator, and certain staff members, claiming violations of the due process clause of the Fourteenth Amendment of the United States Constitution as well as state negligence causes of action. (Doc. 3).

Defendants County, Adrianne Jaramillo, and Lisa Burnside filed the instant "Defendants' Motion to Dismiss Counts I and IV of Plaintiff's First Amended Complaint Brought Under 42 U.S.C. § 1983 and for Qualified Immunity" (Motion to Dismiss) pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 47). The matter now is fully and timely briefed. *See* (Docs. 48 and 51-54). This Court notes jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983 and 1988. Having

considered the briefing, the "Amended Complaint for the Recovery of Damages Caused by the Deprivation of Civil Rights and Wrongful Death" (Amended Complaint) (Doc. 3), the controlling law, and for the following reasons, the Court now grants the Motion to Dismiss, in part, as described below.

I. The Amended Complaint[1]

A. Factual Allegations

On June 20, 2017, a United States Park Ranger arrested Ruben Toledo at the Petroglyph National Park "for suspicion of operating a motor vehicle while intoxicated." (Doc. 3) at ¶¶ 18-21. The Park Ranger transported Toledo to the Sandoval County Detention Center and Toledo was transferred to the CCDC the next day. *Id.* at ¶ 22.

Upon his arrival at the CCDC, Toledo allegedly told CCDC staff that "he suffered from depression and anxiety, and staff noted he was chemically impaired." *Id.* at ¶ 24. Toledo also allegedly reported "prior to being booked" that he used alcohol daily. *Id.* at ¶ 34. According to Plaintiff, Toledo's vitals were abnormal at the time of booking. *Id.* at ¶ 26. Nonetheless, Plaintiff claims "staff cleared [Toledo] for housing in [the] general population." *Id.* at ¶ 28.

Plaintiff alleges that Toledo later asked to be removed from the "general population because he feared he was in danger of bodily harm by other inmates if he remained." *Id.* at ¶ 31. Plaintiff also alleges Toledo "began seeing things in his cell…." *Id.* at ¶ 32.

On June 23, 2017, Defendant Michelle Lucero, a physician's assistant, examined Toledo. *Id.* at ¶ 33. Defendant Lucero purportedly noted that Toledo's "blood pressure and pulse were still elevated…." *Id.* at ¶ 35. Plaintiff contends that Defendant Lucero prescribed "Lisinopril, a blood pressure medication, and Metformin, a medication used to treat diabetes." *Id.* at ¶ 38.

---

[1] The Court summarizes only those portions of the Amended Complaint that are relevant to the Motion to Dismiss.

Plaintiff alleges that Toledo then went "back to his cell with no further care or monitoring ordered." *Id.* at ¶ 39.

Plaintiff further alleges that later that day Toledo began "screaming to be let out of his cell" and hallucinating. *Id.* at ¶¶ 40-41. Plaintiff asserts that when jail officers went to check on Toledo, he ran out of his cell, causing jail officers to mace and handcuff him. *Id.* at ¶¶ 42-43. Plaintiff maintains that jail officers then decided to have Toledo medically cleared in order to house him in segregation. *Id.* at ¶ 44.

Plaintiff contends that Toledo subsequently "told medical staff that he was experiencing alcohol withdrawal and was hallucinating." *Id.* at ¶ 46. Plaintiff also contends that Toledo's "vitals were still abnormal." *Id.* at ¶ 52. According to Plaintiff, medical staff contacted Defendant Michael Hildenbrant, a nurse without prescribing authority, for instructions. *Id.* at ¶¶ 47 and 49. "Defendant Hildenbrant was not at the facility." *Id.* at ¶ 48. Plaintiff alleges that "Defendant Hildenbrant directed staff to place [Toledo] on alcohol withdrawal protocol, including prescription medication, over the phone." *Id.* at ¶ 50.

Toledo allegedly went back to segregation where he "was observed periodically by jail guards," but "not monitored by medical staff." *Id.* at ¶¶ 56-57. According to Plaintiff, beginning the night Toledo returned to segregation, he began acting erratically and could not stand on his own. *Id.* at ¶¶ 58-67.

Plaintiff alleges that the next morning Defendant Burnside, a CCDC sergeant, was called to Toledo's "solitary cell" and "observed him through his food port laying on the floor seizing." *Id.* at ¶¶ 9 and 73. Defendant Burnside then entered the cell. *Id.* at ¶ 74. After Toledo stopped seizing, Defendant Burnside supposedly asked Toledo "if he was ok." *Id.* at ¶ 75. Plaintiff maintains that Toledo looked up at Defendant Burnside but he "could not speak." *Id.* at ¶ 76.

3

According to Plaintiff, Defendant Burnside "noticed dried blood on [Toledo's] forehead." *Id.* at ¶ 77.  Apparently, Toledo had also expelled "some form of bodily fluid." *Id.* at ¶ 133.

Plaintiff alleges that "[r]ather than call 911, Defendant Burnside directed officers to take [Toledo] to the shower to clean up." *Id.* at ¶ 79.  Plaintiff also maintains that the officers had to carry Toledo to the shower because he could not walk. *Id.* at ¶ 82.  Next, Plaintiff asserts that Defendant Burnside left Toledo and the officers to look for a "new isolation cell" for Toledo. *Id.* at ¶ 80.

Toledo finally became unresponsive and was transported to Cibola General Hospital and then to the University of New Mexico Hospital. *Id.* at ¶¶ 84-96.  Toledo never regained consciousness and was removed from life support on July 1, 2017, and, consequently, died. *Id.* at ¶¶ 97-99.

With respect to Defendant Jaramillo, Plaintiff asserts that Defendant Jaramillo, acting in her official capacity as the CCDC administrator, was "the final policy maker" for the CCDC. *Id.* at ¶¶ 8 and 182.  Hence, Plaintiff concludes that Defendant Jaramillo's "policies … became the customs and policies of the County." *Id.* at ¶ 183.  Plaintiff also alleges that "[d]uring her tenure and that of her predecessors, Defendant Jaramillo practiced a custom and policy of providing inadequate medical care to inmates at CCDC." *Id.* at ¶ 184.

To support that last allegation, Plaintiff contends that in 2016, "[n]ot long before" Toledo's death, another CCDC inmate, Douglas Edmisten, "died as a result of staff refusal to provide medical care." *Id.* at ¶¶ 185 and 187.  Edmisten purportedly suffered from internal bleeding. *Id.* at ¶ 187.  The CCDC administrator at that time was Michael Dodds. *Id.* at ¶ 186.

Plaintiff alleges that despite Edmisten and the other inmates' pleas for help "CCDC staff watched as Mr. Edmisten suffered in pain but refused to take him to see medical staff or to a

hospital." *Id.* at ¶¶ 188-89.  According to Plaintiff, "Dodds ordered his staff not to call an ambulance for Mr. Edmisten," which resulted in his death at the CCDC.  *Id.* at ¶¶ 190-91.  Plaintiff alleges that "Defendant Jaramillo continued the practice [and] policies set in place by Michael Dodds."  *Id.* at ¶ 193.

   *B. Plaintiff's Claims*

In Count I of the Amended Complaint, Plaintiff brings a 42 U.S.C. § 1983 claim against Defendant Burnside, in her individual capacity, for violating Toledo's Fourteenth Amendment due process right to adequate medical care.[2]  In Counts II and III, Plaintiff brings state negligence claims against all Defendants.  Finally, Plaintiff brings Count IV against Defendant Jaramillo, in her official capacity, alleging she practiced a policy and custom that violated Toledo's constitutional rights.[3]

II. *The Motion to Dismiss*

First, Defendants County, Jaramillo, and Burnside move under Rule 12(b)(6) to dismiss Count I, as it pertains to Defendant Burnside, in her individual capacity, on the basis of qualified immunity.  Second, Defendants County, Jaramillo, and Burnside move under Rule 12(b)(6) to dismiss Count IV for failure to state a claim against Defendant Jaramillo, in her official capacity.  Plaintiff opposes the Motion to Dismiss in its entirety.

---

[2] Plaintiff also brought Count I against Defendants Lucero and Hildenbrant.  The Court has since dismissed Count I, without prejudice, as it relates to those Defendants.  *See* (Doc. 45).

[3] The Court notes that Plaintiff's suit against Defendant Jaramillo, in her official capacity as the CCDC administrator, is the equivalent of a suit against Defendant County.  *See Lopez v. LeMaster*, 172 F.3d 756, 763 (10th Cir. 1999) (holding that "Appellant's suit against Sheriff LeMaster in his official capacity as sheriff is the equivalent of a suit against Jackson County").  Count IV, therefore, is a cause of action against Defendant County.

*III. Standard of Review*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (citation omitted). In making this plausibility assessment, courts "accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (citation omitted).

In evaluating a qualified immunity defense in the context of a Rule 12(b)(6) motion to dismiss, courts "must determine whether the plaintiff pled facts indicating: (1) the defendant violated a statutory or constitutional right and (2) that right was 'clearly established' at the time of the challenged conduct." *Crall v. Wilson,* 769 Fed. Appx. 573, 575 (10th Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "The burden of making this two-part showing lies with the plaintiff…." *Carabajal v. City of Cheyenne, Wyoming*, 847 F.3d 1203, 1208 (10th Cir. 2017). "This is a heavy burden." *Id.*

*IV. Discussion*

Before discussing the substantive arguments of the Motion to Dismiss, the Court must first address Plaintiff's request that the Court summarily deny the Motion to Dismiss due to Defendants' "improper piecemeal motions practice." (Doc. 51) at 4. *See Vera v. Rodriguez*, 2017 WL 6621048, at *1 (D.N.M.) (citation omitted) (observing that "[i]t is well established that federal district courts possess the power to administer their dockets in a manner that conserves

scare judicial resources and promotes the efficient and comprehensive disposition of cases," including limiting successive dispositive motions); *Caldera Pharm., Inc. v. Bellows*, 2012 WL 13005319, at *1 n.2 (D.N.M.) (noting that this District "strongly discourage[s]" splitting "what is in reality a single motion … into distinct and individual pleadings").

On August 26, 2019, Plaintiff served Defendants County and Jaramillo with the summons and Amended Complaint. (Docs. 5 and 6). On December 20, 2019, Plaintiff sought a 90-day extension to serve Defendant Burnside, which the Court granted. (Docs. 25 and 41). On December 30, 2019, Defendants Hildenbrant and Lucero filed their motion to dismiss (First Motion to Dismiss), which raised qualified immunity issues. (Doc. 27). Consequently, on January 17, 2020, the Court stayed the proceedings pending the outcome of the First Motion to Dismiss. (Doc. 36).

Plaintiff finally served Defendant Burnside on February 4, 2020. (Doc. 42). The Court then granted the First Motion to Dismiss on September 2, 2020, which lifted the stay. (Doc. 45). Defendants County, Jaramillo, and Burnside subsequently filed their Motion to Dismiss on September 15, 2020, which also raises a qualified immunity issue, and, three days later, the Court entered another order staying proceedings pending the outcome of that Motion to Dismiss. (Docs. 47 and 50).

Plaintiff contends that Defendants County and Jaramillo had no legitimate reason to wait so long to file a motion to dismiss when they were served well in advance of the First Motion to Dismiss. Plaintiff surmises that "[t]he only logical conclusion to be made is that the defendants wished to take advantage of consecutive discovery stays that come with piecemeal qualified immunity motions." (Doc. 51) at 5. Plaintiff notes that "[t]his tactic not only creates unnecessary work for the trial court, as it is forced to revisit the face of the complaint on multiple

occasions, but it also leads to the injustice of stale evidence and lost discovery opportunities." *Id.*

Defendants County, Jaramillo, and Burnside explain that "Defendant County and Defendant Jaramillo could not move to dismiss the **Monell** [municipal liability] claims against them until the claims against Defendant Burnside could be decided by the Court." (Doc. 53) at 4; *see Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (stating that "a municipality may not be held liable where there was no underlying constitutional violation by any of its officers"). Also, Defendants County, Jaramillo, and Burnside could not have filed a motion to dismiss until after September 2, 2020, the date the first stay of proceedings was lifted. Given those circumstances, it was reasonable for Defendants County, Jaramillo, and Burnside to file their Motion to Dismiss just 13 days after the first stay of proceedings was lifted. Accordingly, the Court denies Plaintiff's request to summarily deny the Motion to Dismiss on the basis of improper piecemeal motions practice. The Court now proceeds to address the substantive issues raised in the Motion to Dismiss.

> A. *Count I: Whether Defendant Burnside is entitled to Qualified Immunity in her Individual Capacity*
>
>> 1. *Has Plaintiff Stated a Plausible Fourteenth Amendment Due Process Claim Against Defendant Burnside?*

To defeat the qualified immunity defense Defendant Burnside raises, Plaintiff must first plead facts that show Defendant Burnside violated Toledo's Fourteenth amendment due process right to adequate medical care. "Under the Fourteenth Amendment's due process clause, pretrial detainees … are entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment." *Barrie v. Grand County, Utah*, 119 F.3d 862, 867 (10th Cir. 1997). The Eighth Amendment provides that a "claim for inadequate

medical attention must be judged against the 'deliberate indifference to serious medical needs' test…." *Id.* at 868 (citation omitted). "The deliberate indifference standard has objective and subjective components," both of which a plaintiff must prove. *Sawyers v. Norton*, 962 F.3d 1270, 1283 (10th Cir. 2020) (citation omitted).

"The objective component … is met if the harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause." *Id.* (citation omitted). Here, Toledo suffered a serious harm, death. *See Martinez v. Beggs,* 563 F.3d 1082, 1088-89 (10th Cir. 2009) (agreeing that death meets sufficiently serious harm element of objective component of Eighth Amendment claim). Plaintiff, therefore, has alleged facts which show that she has met the objective component of the deliberate indifference standard.

"The subjective inquiry, in turn, asks whether 'the defendants knew [the detainee] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it.'" *Quintana v. Santa Fe Cty. Bd. of Commissioners*, 973 F.3d 1022, 1029 (10th Cir. 2020) (citation omitted). "A plaintiff may prove awareness of a substantial risk through circumstantial evidence that the risk was obvious." *Lance v. Morris*, 985 F.3d 787, 794 (10th Cir. 2021). The Tenth Circuit "effectively cabins this exception by requiring that such risks present themselves as 'obvious' to the so-called 'reasonable man.'" *Quintana*, 973 F.3d at 1029 (citations omitted).

In this case, Plaintiff alleges that Defendant Burnside "observed [Toledo] through his food port laying on the floor seizing." (Doc. 3) at ¶ 73. Defendant Burnside then went in the cell. When Toledo stopped seizing, Plaintiff alleges that "Defendant Burnside asked him if he was ok" but Toledo "could not speak" and only "looked up at her." *Id.* at ¶¶ 75-76. Plaintiff further alleges that Defendant Burnside saw dried blood on Toledo's forehead and noticed that Toledo had "expell[ed] some form of bodily fluid." *Id.* at ¶¶ 77 and 133. Finally, Plaintiff

9

alleges that Toledo "could not walk on his own.…" *Id.* at ¶ 82.  Accepting those allegations as true and in the light most favorable to Plaintiff, a reasonable person observing Toledo when Defendant Burnside did would find it obvious that Toledo faced a substantial risk of harm.  *See Quintana*, 973 F.3d at 1029-30 (although common characteristics of intoxicated persons, like vomiting, do not present obvious risk of harm, "seriousness of the medical risks associated with vomiting blood would be obvious to any reasonable observer").  Plaintiff, therefore, has alleged facts from which the Court could reasonably infer that Defendant Burnside was aware that Toledo faced a substantial risk of harm.

Plaintiff further alleges that Defendant Burnside reacted to that substantial risk of harm by ordering officers to carry Toledo to a shower to clean up and finding a new isolation cell for Toledo.  Those alleged actions, accepted as true and viewed in the light most favorable to Plaintiff, do not come close to addressing Toledo's obvious medical needs.  One could easily infer from those alleged actions that Defendant Burnside did not take any measures, let alone reasonable measures, to abate the substantial risk of harm Toledo faced.  Hence, Plaintiff has alleged facts demonstrating that Defendant Burnside disregarded that substantial risk of harm.  Plaintiff, thus, has alleged facts that show she meets the subjective prong of the deliberate indifference standard as well.

Having alleged sufficient facts to meet both the objective and subjective standards of the deliberate indifference standard, the Court concludes that Plaintiff has stated a plausible Fourteenth Amendment due process claim against Defendant Burnside for providing inadequate medical care.

> *2. Has Plaintiff Demonstrated that Defendant Burnside Violated a Clearly Established Right?*

With respect to the second qualified immunity prong, "[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir.), *cert. denied sub nom. Cummings v. Bussey*, 140 S. Ct. 81 (2019) (citation omitted). "Ordinarily, '[a] plaintiff may satisfy this [clearly-established-law] standard by identifying an on-point Supreme Court or published Tenth Circuit decision [that establishes the unlawfulness of the defendant's conduct]; alternatively, the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Id.* (citation and internal quotation marks omitted). Importantly, "the federal right allegedly violated must have been 'clearly established at the time of the defendant's unlawful conduct.'" *Id.* at 1240 (citation omitted).

The Tenth Circuit recently acknowledged that "prior to January 2016, it was clearly established that when a detainee has obvious and serious medical needs, ignoring those needs necessarily violates the detainee's constitutional rights." *Quintana*, 973 F.3d at 1033. Consequently, Defendant Burnside's failure to attend to Toledo's obvious and serious medical needs in June 2017 violated clearly established law.

In sum, Plaintiff has pled facts indicating that (1) Defendant Burnside violated Toledo's Fourteenth Amendment due process right to adequate medical care; and (2) that right was clearly established in June 2017. Accordingly, Defendant Burnside's qualified immunity defense fails and the Court denies the Motion to Dismiss Count I as it applies to Defendant Burnside, in her individual capacity.

> B. *Count IV: Whether Plaintiff has Stated a Plausible Municipal Liability Claim Against Defendant Jaramillo, in her Official Capacity*

Defendants County, Jaramillo, and Burnside argue that Plaintiff has not alleged a plausible municipal liability claim against Defendant Jaramillo, in her official capacity, because Plaintiff has not alleged a County, i.e., CCDC, policy, custom, or practice that violated Toledo's constitutional rights. Plaintiff counters that discovery may still reveal a formal policy that violated Toledo's constitutional rights. Alternatively, Plaintiff argues that Dodds' instruction not to transport Edmisten to a hospital or to provide him with medical care became a *de facto* or informal policy to withhold medical care from inmates suffering from a medical emergency, a policy Defendant Jaramillo allegedly continues to follow. Plaintiff also claims that the incident involving Edmisten shows a custom at the "CCDC that encouraged staff to ignore and delay medical care." (Doc. 51) at 16.

"[T]o establish municipal liability [under Section 1983], a plaintiff must first demonstrate a 'municipal policy or custom,' which may take one of [several] forms…." *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019). Relevant to this case, those forms include:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; [and] (3) the decisions of employees with final policymaking authority….

*Id.* "After establishing a municipal policy or custom, a plaintiff must demonstrate 'a direct causal link between the policy or custom and the injury alleged.'" *Id.* at 1284 (citation omitted).

> 1. *Formal Regulation or Policy*

A "plaintiff cannot simply allege that there is a policy in place, but, rather, must plead facts that, if true, would give rise to a plausible inference that such a policy exists. With formal or written policies, satisfying this pleading standard is easy…." *Ward v. City of Hobbs*, 398 F.

Supp. 3d 991, 1039 (D.N.M. 2019), *appeal dismissed,* 2019 WL 8064625 (10th Cir.). In that situation, a "plaintiff can simply allege what the policy is and where it is codified." *Id.* Plaintiff has not alleged what formal policy substantiates her municipal liability claim. Moreover, Plaintiff's reference to future discovery possibly revealing a formal policy is not relevant at this stage of the proceedings. As this Court explained,

> [t]he expectation is that the plaintiff must tell the Court at the outset, in the complaint, (i) why he or she thinks a policy exists -- alleging specific facts; and (ii) what he or she thinks the policy is. The Court will then decide whether (i) plausibly suggests (ii). The plaintiff must tell the Court, however, what he or she has, or else the Court will disregard the alleged policy as a naked conclusion.

*See id.* at 1042. For the above reasons, the Court concludes that Plaintiff has failed to allege a plausible municipal liability claim based on a formal regulation or policy.

### 2. Informal Policy

While Dobbs' decision to tell CCDC employees not to transport Edmisten to the hospital or to provide adequate medical care could be considered a decision by a final policymaking authority, and an informal policy, Plaintiff must still allege facts that demonstrate a direct causal link between that informal policy and the injury Defendant Burnside caused Toledo.[4] Of particular note, Dobbs was not the CCDC administrator when Toledo resided at the CCDC. Plaintiff has not alleged any specific facts to suggest that Defendant Jaramillo, in fact, continued Dobbs' purported informal policy or that Defendant Burnside even knew about that informal policy when she encountered Toledo. Even accepting Plaintiff's allegations as true and viewing those allegations in the light most favorable to Plaintiff, the Court cannot conclude that Plaintiff alleged facts from which the Court could reasonably infer a direct causal link between Dobbs'

---

[4] Defendants County, Jaramillo, and Burnside do not dispute that a jail administrator is a final policymaker under state law. *See* NMSA 1978 § 33-3-1(A) (1998 Repl. Pamp.) ("The common jails shall be under the control of … jail administrators hired by the board or county commissioners….").

alleged informal policy and the injury Defendant Burnside caused Toledo.  Accordingly, Plaintiff has not alleged a plausible municipal liability claim based on Dobbs' supposed informal policy of not transporting ill inmates to hospitals or providing adequate medical care.

       3.  Custom

To establish Section 1983 municipal liability based on a custom, a plaintiff must prove, among other things, "[t]he existence of a continuing, persistent and widespread practice of unconstitutional misconduct by [municipal] employees…." *Gates v. Unified Sch. Dist. No. 449 of Leavenworth Cty., Kan.*, 996 F.2d 1035, 1041 (10th Cir. 1993).  However, one prior incident, as Plaintiff alleges occurred with Edmisten, "fall[s] short of plausibly alleging a 'widespread practice'" of providing inadequate medical services, "much less a practice 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *Waller*, 932 F.3d at 1290 (citation omitted).  Plaintiff, therefore, has not plausibly alleged a municipal liability claim based on custom.

For all of the foregoing reasons, Plaintiff has failed to allege a plausible municipal liability claim based on either a CCDC policy or custom.  Hence, Count IV is subject to a Rule 12(b)(6) dismissal without prejudice.

       IT IS ORDERED that

       1.  Defendants' Motion to Dismiss Counts I and IV of Plaintiff's First Amended Complaint Brought Under 42 U.S.C. § 1983 and for Qualified Immunity (Doc. 47) is granted in part; and

      2.  Count IV of the Amended Complaint (Doc. 3) is dismissed without prejudice.

                                    _____
                                      UNITED STATES DISTRICT JUDGE